BENDER, *Appellant*, v. THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY.

### Division Two, February 2, 1897.

1. **Practice:** DEMURRER TO EVIDENCE. A demurrer to the evidence admits every fact which the jurors might infer if the evidence were before them, and should be sustained only when the evidence thus considered fails to make proof of some essential averment.

2. ———: ———. When the facts are disputed or the credibility of witnesses is drawn in question or a material fact is left in doubt or there are inferences to be drawn from the facts proved, the case, under proper instructions, should be submitted to the jury.

Bender v. St. L. & S. F. R'y Co.

3. **Master and Servant**: NEGLIGENCE: DEFECTIVE APPLIANCES. A master is bound to furnish his servant reasonably safe appliances with which to perform his work, and the servant does not assume the risk of danger from the use of unsafe machinery, unless the defects are so glaring that a reasonably prudent person would not attempt to use it.

4. **Negligence**: RAILROAD: FOREIGN CAR. A railroad company which undertakes to haul a foreign car and has an opportunity to inspect it, is guilty of negligence if it fails to discover and repair dangerous defects in the coupling appliances.

5. ———: ———: MACHINERY. Though a railroad company is not required to adopt any particular kind of machinery, it must see that the kind it does use is reasonably safe for the intended work.

6. ———: ———: PLEADING. An allegation in the petition as to a defective coupling *held* sufficient to authorize proof of any defect in the coupling appliances which would prevent the drawbar from passing under the car.

7. ———: ———: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. Whether plaintiff was guilty of contributory negligence in attempting to make the coupling as he did was, under the evidence in this case, a question for the jury.

*Appeal from Jasper Circuit Court.*—HON. W. M. ROBINSON, Judge.

REVERSED AND REMANDED.

*M. C. Reynolds & Halliburton* for appellant.

(1) It is the province of the jury to determine questions of fact which are at issue in a case. The court should not instruct them to draw inferences which are not legal. *Moses v. Eddy*, 28 Mo. 382; *Smith v. Hutchison*, 83 Mo. 690. (2) If there is any evidence relevant to the allegations, it is for the jury to determine their sufficiency, and the jury may make all reasonable inferences from the facts in evidence. *Chamberlain v. Smith*, 1 Mo. 482; *Magon v. Whiting*, 1 Mo. 613; *State v. Woods*, 7 Mo. 536; *Barton v. Rail-*

*road*, 52 Mo. 253; *Frick v. Railroad*, 75 Mo. 542. (3) The question of negligence is one of fact to be submitted to the jury under instructions from the court. *Barton v. Railroad*, 52 Mo. 253; *Owens v. Railroad*, 58 Mo. 386; *Wyatt v. Railroad*, 55 Mo. 485. (4) Though all the witnesses may testify that there was no negligence on the part of defendant, the jury may nevertheless find that there was negligence, if the physical facts of the case and the manner of injury raise the necessary inference. *Hunt v. Railroad*, 14 Mo. App. 161; *Minster v. Railroad*, 53 Mo. App. 276. (5) The question as to whether a given act was the proximate cause of the injury complained of is, where the character of facts are such that different conclusions may be drawn from them, a question for the jury. *Dunn v. Railroad*, 21 Mo. App. 188. (6) When plaintiff has made out a *prima facie* case of negligence against a railroad company in the operating of its road, although the defendant may introduce evidence which entirely overthrows and disproves the *prima facie* case of the plaintiffs, the trial court can not say as a matter of law that it is so overthrown and direct a verdict for defendant. *Sappington v. Railroad*, 14 Mo. App. 86; *Boom v. Railroad*, 20 Mo. App. 235; *Kenney v. Railroad*, 70 Mo. 578; *Henry v. Railroad*, 109 Mo. 488. (7) If the facts constituting alleged negligence are disputed, or if there be a reasonable doubt of the inferences proper to be drawn from undisputed facts, the question of negligence should be left to the jury. *Fusile v. Railroad*, 45 Mo. App. 541; *Kinney v. Springfield*, 35 Mo. App. 110; *Brown v. Railroad*, 50 Mo. 466; *Hurlin v. Railroad*, 92 Mo. 440; *O'Hare v. Railroad*, 95 Mo. 662; *Kenney v. Railroad*, 70 Mo. 578. (8) In questions of negligence where the character of facts are such that different conclusions may be drawn from them, or where undisputed they admit of different constructions

and inference, the questions should be submitted to the jury. *Norton v. Ittner*, 56 Mo. 352; *Bell v. Railroad*, 72 Mo. 50; *Mannerman v. Siemertz*, 71 Mo. 104; *Roddy v. Railroad*, 104 Mo. 250; *O'Mellia v. Railroad*, 115 Mo. 205; *Nagel v. Railroad*, 75 Mo. 665; *Scoville v. Railroad*, 81 Mo. 434; *Petty v. Railroad*, 88 Mo. 306. (9) A demurrer to the evidence at the close of plaintiff's case admits every relevant fact shown by competent evidence, as well as every inference which may logically be drawn from the facts thus shown. *Herboth v. Gaal*, 47 Mo. App. 255; *Field v. Railroad*, 46 Mo. App. 451. (10) The evidence on the part of plaintiff in this case shows the drawbar to be defective and dangerous; and that plaintiff did not know of its dangerous condition, and that defendant could have known its condition by ordinary care and prudence; and these facts authorize the giving of the case to the jury without regard to defendant's evidence. *Gibson v. Railroad*, 46 Mo. 163; *Rodney v. Railroad*, 127 Mo. 676.

*L. F. Parker* and *J. T. Woodruff* for respondent.

(1) The burden of proving that defendant was negligent and that its negligence was the cause of the injury, rests upon the plaintiff. Shearman & Redfield on Neg. [2 Ed.], side page 12; 11 Thomp. Neg. 1035; *O'Malley v. Railroad*, 113 Mo. 319. (2) Not only so but if it appear that but for his unskillful manner in uncoupling the car, the injury would not have happened, then the plaintiff can not recover. Shearman & Redfield, Neg. [2 Ed.], side pages 25 to 34. (3) The question to be determined in every case is, not whether the plaintiff's negligence caused, but whether it contributed to the injury of which he complains. 2 Thomp. Neg., p. 1146; *Milburn v. Railroad*, 86 Mo. 104; 4 Am. and Eng. Ency. Law, p. 15. (4) Failing

utterly to show negligence on the part of defendant and his own testimony showing that but for his dangerous method of performing his duty the injury would not have happened, it can not be said that the court erred in sustaining the demurrer to the evidence. *Loring v. Railroad*, 128 Mo. 349. (5) The trial court in passing upon the case, viewed the plaintiff's evidence and that of his witnesses in the light of the following plain principles of law. *First.* That a brakeman's employment is at all times hazardous, and being so, requires of him every precaution necessary for his safety. Bailey, Master and Servant, p. 145. *Second.* That the master is not required to furnish any particular kind of machinery or appliance, his duty in this respect being fully discharged when he exercises reasonable care to furnish safe machinery and appliances. Bailey, Master and Servant, p. 15; *Bohn v. Railroad*, 106 Mo. 429; *Friel v. Railroad*, 115 Mo. 503; *Smithson v. Railroad*, 7 N. W. Rep. 791. *Third.* That plaintiff assumed the risks incident to his employment, and that the risk attending the uncoupling of cars with different kinds of drawbars was one of them. *Hulett v. Railroad*, 67 Mo. 239; *Tuttle v. Railroad*, 122 U. S. 189; *Jackson v. Railroad*, 104 Mo. 448; *Renfro. v. Railroad*, 86 Mo. 309; *De Vitt v. Railroad*, 50 Mo. 302; Woods, Law of Master and Servant, 326; *Wormele v. Railroad*, 10 Atl. Rep. 49.

GANTT, P. J.—The sole question for our determination at this time in this case is the propriety of sustaining the demurrer to the evidence. Under our system of practice a demurrer to the evidence admits every fact which the jurors may infer if the evidence were before them, and should only be sustained when the evidence thus considered fails to make proof of some essential averment. *Rine v. Railroad*, 100 Mo.

228; *Frick v. Railroad,* 75 Mo. 595; *Myers v. Kansas City,* 108 Mo. 480.

When the facts are disputed, or the credibility of witnesses is drawn in question, or a material fact is left in doubt, or there are inferences to be drawn from the facts proven, the case under proper instructions should be submitted to the jury. It is for the jury and not the court to pass on the weight of evidence where there is any substantial evidence.

These fundamental principles must often be invoked in the ever recurring damage cases based upon negligence.

The master is bound to use reasonable care and precaution to furnish his servant safe appliances with which to do his work, and in keeping them in good order and condition, and the servant does not assume the risk of danger from the use of unsafe machinery unless the defects are so glaring or obvious that a reasonably prudent man would not attempt to use them. Ordinary care requires a railroad company to inspect the cars which it requires its brakemen to handle, and this duty also requires reasonable inspection of "foreign" cars which it handles in order to discover defects which may endanger the lives and limbs of its servants. The constitution does not compel it to haul cars belonging to other companies which are so defective as to endanger the safety of its servants.

The learned circuit court held that plaintiff made a *prima facie* case on his own evidence, but upon the whole evidence sustained the demurrer.

The grounds of recovery are tersely stated in the petition to be that plaintiff was employed by defendant as a brakeman on its freight train number 35 going west from Monett, Missouri, to Neodesha, Kansas, on July 30, 1893; that there was placed in said train by defendant a Baltimore & Ohio freight car number 9380,

which said car was defective and unsafe to use in a train, and very dangerous to brakemen in coupling and uncoupling, in this, *that the lip on the drawbar at one end of said car was broken off, and the plate on the dead-wood on the bumper at the same end of said car was broken and worn out, and said car was so that there was nothing to prevent the drawbar from going back under said car and thereby making it very dangerous and unsafe for brakemen in coupling and uncoupling said car.*"

The evidence disclosed beyond all cavil the employment of plaintiff as a brakeman on defendant's line from Monett, Missouri, to Neodesha, Kansas; that Monett was the end of the division and all trains going west were made up there, and that the company had inspectors there whose duty it was to examine the cars and see that they were in safe condition for the traffic and for the employees to handle. It was also in evidence that it was no part of the duty of the trainmen to make up the train or examine the cars, but to assume their respective duties thereon after it was made up.

Neither is there any conflict as to the car on which plaintiff was hurt, and the character of its appliances and their condition. It was a box freight car belonging to the Baltimore & Ohio Railway Company, number 9380, and had originally been equipped with draw-bars constructed with a safety lug on top of it whose office was to ease the buffing strain upon the springs and followers and thus keep the drawbar from going back under the car if the springs and followers do not hold it.

This safety lug, or *lip* as commonly called by the brakemen, had been broken off some time prior to the day it was inspected and sent out in the train in which plaintiff was hurt, so that the jury might well have found, had the case been submitted to them, not only that the appliance was no longer what it was designed

to be, namely, to prevent the drawbar from going back under the train and making it dangerous for the brakemen who were required to couple and uncouple the cars, but that notice of its unsafe condition might well have been found also. In addition to this the iron plate which was evidently intended to supplement the safety lug by presenting a hard surface to it was also broken off or so mutilated that it offered no impediment to break the force of the jar or bumping on the springs and followers beneath the car. In addition to this it appeared that the deadwood had been so battered that portions of it were split out and gone. This defect in the deadwood also appeared to have existed for some time and was constantly getting worse from wearing.

There was little, if any, controversy that plaintiff was attempting to uncouple the train when the engineer gave slack and his hand which was on the coupling pin was rammed into this broken place in the deadwood and badly crushed.

There was also evidence tending to show that the drawbar was jammed back as far as the coupling pin would let it go under the car; that before the train was moved there was a space only of nine inches between the two cars whereas the ordinary spacing when the couplings are in good condition is twenty inches.

The evidence tended strongly to prove that drawbars with this safety lug were used to a large extent by the principal systems west of the Mississippi river; that seventy-five per cent of all cars passing through St. Louis had this contrivance, and forty to fifty per cent of the eastern cars coming to St. Louis also were thus provided.

It was in evidence that the St. Louis & San Francisco railway and other railroads used a drawbar without this safety lug or lip, and there was evidence that the coupling appliances as to springs and followers

were attached under the car whether the drawbar had the safety lug or not, and a number of defendant's witnesses testified that the coupling was as safe without the lug as with it, and on the other hand there was evidence that it was a great protection to the brakeman in making the coupling, particularly if the springs and other coupling attachments were out of order, or so weak as not to hold the drawbar back.

There was a conflict as to plaintiff's knowledge of the condition of the drawbar, as to the broken lug thereon, the absence of the iron plate on the deadwood, and the bad and battered condition of the deadwood where the pin played against it. Plaintiff testified he had never seen the car until he was hurt; had had no occasion to handle it and did not discover its defective condition until he was caught, and then noticed the condition it was in. Other brakemen of experience testified that they might have noticed the lug was broken in uncoupling, but would not have seen the broken plate and the hole in the deadwood in such a short time. Others that he might have seen had he looked for it.

There was evidence on part of defendant contradicting plaintiff and Allen, as to the giving of signals for slack, from the engineer, fireman and other brakemen. The following rule was also in evidence:

"Each employee is required to be responsible for his own safety as well as for the exercise of the utmost caution to avoid injury to his fellows. Employees of every rank and grade are warned to see for themselves before using them that the rolling stock, machinery and tools which they are required to use are in safe condition, or that they are made so before using. The company does not require or expect its employees to incur any risk from which by the exercise of the judgment and from personal care they can protect them-

selves, but enjoins upon them and demands that they shall take time to use the means necessary to in all cases do their duty in safety."

The foregoing summary is sufficient for the basis of our views upon the sufficiency of the case made to go to the jury.

We think that it tended strongly to prove that the drawbar and its attachments were defective, unsafe, and dangerous; that there was sufficient evidence to justify a finding that defendant by the exercise of ordinary care could have ascertained its unsafe condition, and that the defects were not so glaring, considering the duties of a brakeman, that he was bound as a matter of law to observe their condition the first time he was called to handle them; that whether he was guilty of contributory negligence which would bar him is a question for the jury under all the evidence.

We have not before us the reasons of the learned circuit court in sustaining the demurrer, other than as they are stated by the learned counsel for defendant, and they are, *first*, "that a brakeman's employment is at all times hazardous and being so requires of him every precaution necessary for his safety;" *second*, "that the master is not required to furnish any particular kind of machinery or appliance, his duty in this respect being fully discharged when he exercises reasonable care to furnish safe machinery and appliances;" *third*, "that plaintiff assumed risks incident to his employment and that the risk attending the uncoupling of cars with different kinds of drawbars was one of them."

Considering these in their order, it is true that a brakeman's employment is one of great hazard, and the law does devolve upon him the duty of using care to protect himself from the dangers ordinarily incident to such work; but he is not deemed or re-

quired to assume the risks which arise from the failure of the master to perform the duty of seeing that the appliances which it furnishes its brakemen are reasonably safe and fit for the work required of the brakeman and also of keeping them in repair, and when, as in this case, a railroad company undertook to haul a foreign car in its train and had had an opportunity to inspect it, it is equally held for neglect to discover dangerous defects in its coupling appliances and for failure to repair the same.

So that we can not subscribe to the first proposition as stated by counsel. We regard the law as well settled otherwise in this state. *Gibson v. Railroad*, 46 Mo. 163; *Henry v. Railroad*, 109 Mo. 493; *Nicholds v. Crystal Glass Co.*, 126 Mo. 55.

The second proposition is unquestionably a correct statement of the law, but it does not, in our opinion, uphold the ruling sustaining the demurrer to the evidence. It is true that the master is not bound to adopt any particular kind of machinery, but he is bound to procure that which is reasonably safe for the work designed, whatever kind he adopts.

It is ingeniously argued by counsel for defendant that inasmuch as some other railroad companies used drawbars without the safety lug on them, plaintiff could not complain that the drawbar by which he was injured had this safety lug broken off of it; that the break only left it in the condition that some other drawbars were which were constructed without the lug.

Having adopted this kind of drawbar the law cast upon defendant the duty of seeing it was in a reasonably safe condition and as already said we think the evidence strongly tends to show that had the safety lug not been broken off and had the iron plate been in a safe condition, plaintiff's hand would not have been mashed, notwithstanding the springs were weak and insufficient.

Neither is it any answer to say that after the safety lug was broken off, it was better that the plate also should have been knocked off, otherwise his hand would have been cut off, as the danger from the iron bar only followed the breaking off of the protecting lug.

There was much evidence from which a jury might have found that the springs and followers were in a bad and unsafe condition, notably that the cars stood in nine inches of each other after plaintiff was hurt and the fact that the deadwood was splintered and eaten into by the constant play of the coupling pin against it.

The allegations of the petition were broad enough to cover any defect in the coupling appliance which rendered it insufficient to keep the drawbar from passing under the car.

As to the last proposition urged by counsel for defendant to sustain the judgment of nonsuit, we think in view of all the evidence for plaintiff of his ignorance of the defect in the coupling apparatus, that he had at no time been called by his duties to examine or observe the coupler; the evidence of other experienced brakemen that in the ordinary time of uncoupling a car and keeping his face to the engine he would not be likely to have seen the defect in the deadwood and certainly would not have seen or known of any defect in the springs, and that he had not been warned by any servant of the company of any defects therein, that it was obviously a question for the jury whether he was guilty of contributory negligence in attempting to make the coupling as he did.

For the error in sustaining the demurrer to the evidence the judgment is reversed and cause remanded. SHERWOOD and BURGESS, JJ., concur.