DECKERD, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, February 7, 1905.

1. MASTER AND SERVANT: Defective Appliances: Res Ipsa Loquitur. The fact that an appliance furnished to the servant by the master is defective, whereby the servant is injured, does not make out a prima facie case of negligence on the part of the master.

2. ———: ———: Duty of Master. It is the duty of the master to exercise due care to furnish safe machinery and tools to be used by his servants and to exercise due care to inspect and keep such appliances in a reasonably safe condition.

3. ———: ———. Where a section hand was injured by an iron maul which slipped from its handle while being wielded by a fellow-servant and fell upon him, in an action for such injuries evidence that the maul was insufficiently wedged and that it was the duty of the defendant's foreman to put handles in such mauls and wedge them, was sufficient to take to the jury the issues of whether defendant was negligent in putting the handle in the maul so that it was loose and permitting the maul to become loose on its handle and be used in that condition.

4. ———: ———: Instruction: Harmless Error. An instruction for the plaintiff which allowed the jury to infer the furnishing of a wooden handle on an iron maul was of itself negligence, was erroneous, but where an instruction for the defendant distinctly stated the contrary, and where the jury could not have been misled by the former instruction, the error was harmless.

5. ———: ———: Assumption of Risk. The plaintiff assumed the risk of mauls, of like construction, flying off their handles and striking him, if wedged in the customary manner, but did not assume the risk in respect to this particular maul if there was negligence in failing to wedge it in the customary manner.

6. ——: ——: **Contributory Negligence.** The plaintiff did not use the maul himself and it was not his duty to have seen that it was properly wedged nor to inspect it.

7. **PRACTICE: Inconsistent Instructions.** A party cannot be heard to complain of inconsistencies and contradictions in instructions which are caused by the giving of erroneous instructions for him.

Appeal from Audrain Circuit Court.—*Hon. H. W. Johnson,* Judge.

AFFIRMED.

*Geo. S. Grover* and *Geo. Robertson* for appellant.

(1)   At the close of the plaintiff's case, the demurrer to the evidence should have been sustained. Smith v. Railway, 69 Mo. 32; Bowen v. Railway, 95 Mo. 274; Cagney v. Railway, 69 Mo. 416; Fugler v. Bothe, 117 Mo. 475, 22 S. W. 1113; Steinhauser v. Spraul, 127 Mo. 562, 28 S. W. 620, 30 S. W. 102; Epperson v. Tel. Co., 155 Mo. 346, 50 S. W. 795, 55 S. W. 1050; Minnier v. Railway, 167 Mo. 112, 66 S. W. 1072; Stalzer v. Packing Co., 84 Mo. App. 570; Anderson v. Forrester-Nace Co., 103 Mo. App. 382, 77 S. W. 486.   (2)   At the close of the whole case, the court below should have directed a verdict in the defendant's favor.   The conflict between the instructions given at the request of plaintiff, and those given for the defendant, was prejudicial. Quirk v. Elevator Co., 126 Mo. 279, 28 S. W. 1080.

*Fry & Rodgers* for respondent.

(1)   The employee is not required to exercise the same degree of care and diligence in investigating the risks to which he may be exposed as the employer, but has a right to presume that the employer will furnish him reasonably safe appliances with which to perform the work.   Thompson v. Railway, 86 Mo. App. 148; Porter v. Railroad, 71 Mo. 79.   (2)   The defendant

was bound to furnish his servants reasonably safe tools with which to do their work, and the plaintiff did not assume the risk of danger from the use of unsafe tools. Bender v. Railway, 137 Mo. 241, 37 S. W. 132; Epperson v. Tel. Co., 155 Mo. 282, 50 S. W. 795, 55 S. W. 1050; Nicholds v. Plate Glass Co., 126 Mo. 57, 28 S. W. 991. (3) Even though plaintiff and his superior, Hutchinson, had equal opportunities to discover that the maul was insecurely fastened on the handle, that doesn't preclude a recovery, for it was not the duty of plaintiff to look out for defects, save such as are open to his observation in the ordinary use of the implement. Gutridge v. Railroad, 105 Mo. 524, 16 S. W. 943. (4) The mere fact that the maul came off the handle casts upon the defendant the necessity of explaining and unless it accounts for that fact in a way showing it was not negligence, then it is liable. Johnson v. Railway, 104 Mo. App. 592, 78 S. W. 275; Raney v. Lanchance, 96 Mo. App. 483, 70 S. W. 376; Och v. Railway, 103 Mo. 52; Tateman v. Railway, 96 Mo. App. 453, 70 S. W. 514; Menster v. Railway, 53 Mo. App. 282.

STATEMENT. .

In September, 1903, plaintiff was in the employ of defendant, working on its road as a section hand, in company with five or six other section men, under Hutchinson, the boss or foreman. Between five or six o'clock p. m., on September twenty-first, plaintiff and Fred Nedeschulte, a fellow-workman, were driving spikes into a cross-tie on opposite sides of a steel rail, when the maul used by Nedeschulte slipped from the handle and alighted upon the instep of plaintiff's left foot, causing a serious injury. The suit is to recover for this injury. The specific acts of negligence alleged in the petition, briefly stated, are, first, defendant was negligent in furnishing plaintiff and Nedeschulte unsafe, defective and dangerous mauls; second, it was neg-

ligent in putting a wooden handle in the maul in a loose and careless manner; third, it was negligent in permitting the wooden handle in the maul to become loose and unsafe; and fourth, it was negligent in failing to have the handle in the maul wedged, tightened and securely fastened.

The answer was a general denial and a plea that plaintiff assumed whatever risk there was in the use of the maul and was guilty of contributory negligence.

The evidence shows that Hutchinson, the foreman, had been engaged in that character of work for over twenty years, and that both plaintiff and Nedeschulte had worked as section men on railroads for a sufficient length of time to become familiar with such work and with the tools used in the work, and were, in fact, familiar with both. The mauls used to drive spikes were made of iron or steel, were about ten inches in length and weighed about ten pounds. There was an eye made in the center of each maul to receive the handle. The handles were from three to three and one-half feet long and were of hardwood (hickory or white oak). The life of a handle was about six months. When received the handles were a little too large for the eye of a maul and were whittled down with a pocket knife and then driven into the eye of the maul and wedged by driving one or two iron wedges into the end of the handle. Hutchinson put in new handles and did the wedging. The evidence also shows that after being in for some time, the handles frequently shrunk and became loose from exposure to the weather; when this occurred either Hutchinson or some one of the men would rewedge them, using for the purpose wire nails, spikes or any suitable piece of iron at hand. All the tools (picks, shovels and mauls) used by the section men were brought in on a handcar every evening and stored in a toolhouse and taken out the following morning on a handcar to the place of work, the workmen picking up the first tool handy of the kind they were directed to use,

so that no particular tool was used exclusively by any one workman. The evidence further shows that the blows to send home a spike were brought down with all the strength of the driver, and occasionally a maul would slip from the handle. The handle in the maul that struck plaintiff on the foot was a new hickory handle and had been used about two or three weeks only.

Nedeschulte testified that when he picked the maul up, he did not notice that the handle was loose or that there was anything wrong with it. On the part of plaintiff, the evidence is that the handle was wedged with one small wire nail. Hutchinson testified for the defendant that he put the handle in and wedged it with one or two good iron wedges, the customary manner of wedging the handles. The evidence for both parties shows that it is necessary to wedge the handles to make them secure and unless wedged the mauls are quite likely to fly off when used; it also shows that a small wire nail is an insufficient wedge to hold a maul securely on the handle. The evidence further shows that Hutchinson overlooked the tools daily, in a general way, to see that they were all right and that the men often wedged a handle of their own motion, when they found one loose.

In respect to the accident, plaintiff testified as follows:

"We were spiking west of the depot on the Wabash track; I was on the south side of the track and Mr. Nedeschulte was on the north side of the track, and we were standing facing one another, and I set my spike and tapped it so it wouldn't fly away, and then waited for him to set his spike; after he set his spike I let him hit it one lick, so as to be sure it wouldn't get away; then, when he started to hit again—he had done hit it one hard lick—so when he went to strike again I started to strike my spike, his maul came off and hit me on the foot when I was in a motion to strike." Plaintiff further testified that the spikes which were being driven were about one-half inch square and about five inches in

length and that the tie in which they were driving them, at the time he was hurt, was a new one that had just been slipped under the rails to take the place of an old one removed.

The physicians who attended the plaintiff testified that the metatarsal bones of the foot were fractured and lacerated and, in their opinion, the injury was permanent; that the left leg had shrunk for want of proper nourishment, as a result of the injury to the foot.

Plaintiff was not able to bear any weight on the foot at the trial and had to go on crutches. He testified that he had suffered a great deal of pain from the injury and was still suffering; that he had become weak and nervous and was unable to sleep well.

Two physicians for defendant, who made an examination of plaintiff's foot during the progress of the trial, testified that the foot was one-fourth of an inch larger in circumference than the other, and that the enlargement extended over the whole foot; that there was no evidence present that any bones had been broken and, in their opinion, none were broken and the injury was not permanent. They also testified, in effect, that the injury had been improperly treated; that bacteria had been allowed to get into the wound and cause suppuration, etc.

At the end of plaintiff's case and again at the close of all the evidence, defendant moved the court to instruct the jury that under the law and the evidence plaintiff could not recover. These instructions were denied and under instructions given by the court, the jury found for plaintiff and assessed his damages at $1,500. After taking the usual steps to preserve its exceptions, defendant appealed.

BLAND, P. J. (after stating the facts).—1. The accident was not novel in its character nor one that is altogether unusual; such misfortunes befell in the time of Moses, as we read in Holy Writ this wise and venerable lawgiver laid down a just rule of law in res-

pect to them. He commanded the Israelites to divide their coasts in three parts and build cities of refuge in each of them to which the unmalicious slayer might flee and live. The unfortunate wielder of an axe was classed as one who might escape the avenger of blood. Moses said: "As when a man goeth into the wood with his neighbor to hew wood, and his hand fetcheth a stroke with the axe to cut down the tree, and the head slippeth from the helve, and lighteth upon his neighbor; that he die; he shall flee unto one of those cities, and live." [Deut., XIX: 5.]

In harmony with this ancient law of Moses, the trial court gave the following instruction:

"The court instructs the jury that the defendant was not an insurer of the plaintiff's safety at the time and place here in question; and you are further instructed that you cannot infer or presume that the defendant was negligent at said time' and place, or find a verdict in the plaintiff's favor from the mere fact, if it be a fact, that the spike maul described by the evidence slipped off of its handle and fell upon the plaintiff's foot and injured it."

And the Supreme Court, in Bowen v. Railroad, 95 Mo. 268, said: "The mere fact that an appliance proves to be defective and the servant is injured, does not make out, as between master and servant, for the latter, a prima facie case of negligence on the part of the master;" approved in Fugler v. Bothe, 117 Mo. 1. c. 491, 22 S. W. 1113. On the other hand, it is universal American law that the master, at his peril, must see that due care is exercised in the furnishing of machinery and tools to be used by his servants, having regard to their nature and the purpose for which they were to be used. [Dutzi v. Geisel, 23 Mo. App. 676; Comerford v. Coulter, 82 Mo. App. 362; Palmer v. Telephone Co., 91 Mo. App. 106; Thompson v. Railway, 86 Mo. App. 1. c. 148; Minnier v. Railway, 167 Mo. 99, 66 S. W. 1072; Epperson v. Cable Co., 155 Mo. 346, 50 S. W. 795, 55 S. W. 1050; Beasley

v. Transfer Co., 148 Mo. 413, 50 S. W. 87; Bender v. Railway, 137 Mo. 240, 37 S. W. 132; Rodney v. Railway, 127 Mo. 676, 28 S. W. 887, 30 S. W. 150.] It is likewise the master's duty to use ordinary care to inspect and keep appliances and tools in a reasonably safe condition for the use of his servants. [Coontz v. Railway, 121 Mo. 652, 26 S. W. 661; O'Neil v. Young, 58 Mo. App. l. c. 631, and cases cited; Rodney v. Railroad, Bowen v. Railroad, supra.] Applying these rules of law to the evidence, which, on the part of plaintiff shows that the handle, in the maul that slipped and fell upon him, was wedged by one small wire nail, the concurrent testimony of all the witnesses being that such wedge was insufficient and that wedging was necessary to keep a maul from slipping from the handle, and the conceded fact that all handles were wedged when put into the maul, we think the plaintiff was entitled to go to the jury on the specific allegations of his petition of negligence on the part of the defendant, that it put the handle in the maul so that it was loose and was negligent in permitting the maul to become loose on the handle and to be used in this condition, and hence the instructions in the nature of a demurrer to the evidence were properly overruled.

2.    Defendant complains of the following instruction which the court gave for the plaintiff:

"The jury is instructed that it was the duty of defendant to furnish its section men with spike mauls which were reasonably safe and secure for said section men to work with in the performance of the work which was assigned by defendant to its section men to be done by them.

"If therefore, the jury find and believe from the evidence in the case that the plaintiff, on or about the twenty-first day of September, 1903, with one Nedeschulte, was employed by defendant as section men, and, as such, were engaged in spiking railroad rails to the ties on defendant's track; and if you further believe

that for said work the defendant negligently furnished said Nedeschulte an iron spike maul on a wooden handle with which to do said work; and if you further find from the evidence that by reason of the negligence of the defendant said spike maul was furnished to said Nedeschulte in a condition that was not reasonably safe for use in driving spikes, by reason of said spike maul not being sufficiently wedged and fastened on the handle; and if you further believe that while said Nedeschulte was using said spike maul in driving a spike, it, the said spike maul, by reason of not being sufficiently wedged and fastened on the handle to render it reasonably safe for use in driving spikes became loose on the handle and flew off the handle and struck and injured plaintiff, without any fault or negligence on the part of the plaintiff, and while the plaintiff was in the exercise of ordinary care; and if you further find from the evidence that the defendant knew, or by the exercise of ordinary care, might have known of the unsafe condition of said spike maul, if you find from the evidence that said spike maul was unsafe in time to have, by the use of ordinary care on the part of defendant, avoided injuring plaintiff, then your verdict should be for the plaintiff."

The following clause in the instruction is criticized, to-wit: "and if you further believe that for said work the defendant negligently furnished said Nedeschulte an iron spike maul on a wooden handle with which to do said work," on the ground that it gave the jury to understand that an iron maul on a wooden handle was not a safe and proper maul; that a wooden handle for such a maul was not a safe one, and that it was negligent to furnish such a maul. This clause is open to this criticism and had a tendency to mislead the jury. The clause is not explained or qualified by anything that follows in the instruction and would compel a reversal but for the following instruction given for defendant:

"The court instructs the jury that there is no evi-

dence in this case that either the spike maul or its handle here in question was either defectively constructed or made of improper or defective material and you are further instructed to disregard the evidence concerning the material out of which such maul or handle was constructed in determining the issues in this case."

With this pointed and direct instruction before it, we cannot perceive how the jury could have been led to believe it was instructed that a wooden handle was not a proper one to put in a maul.

3.    Defendant contends that plaintiff assumed the risk incident to the use of the maul.    The court gave the following instruction for defendant on this branch of the case:

"The court instructs the jury that if you find from the evidence in this case that a spike maul wedged with an iron or wooden wedge or a nail is liable, when being used, to fly off the handle, then the risk of injury by being hit by such a maul is a risk assumed by the plaintiff when he entered the employment of the defendant, and he cannot recover in this case."

In view of this instruction, defendant has no room to complain that the jury was not favorably instructed on this branch of the case.    The risk plaintiff assumed was the risk of the mauls flying off their handles and striking him, after the handles had been put in and wedged in the customary manner.    In respect to this particular maul, if there was negligence, it is attributable to Hutchinson in failing to wedge it in the customary manner, if he neglected so to do, or to Nedeschulte in failing to discover that it was loose on the handle, if it was loose, when he took it in his hands for use on the day of the accident.    Plaintiff did not use it, nor was it his duty to have seen that it was properly wedged when the handle was put in, nor to inspect it when he was not using it, yet the court gave the following instruction for the defendant:

"If you find from the evidence in the case that said maul was defectively fastened on to the handle, and the plaintiff knew of that fact, or by the exercise of reasonable care on his part, could have known of such fact, but went and worked about the same and was thereby injured, then he is guilty of such contributory negligence on his part as precludes a recovery, and you will find for the defendant."

This instruction shifted the duty from Hutchinson, the boss, to the plaintiff, the employee, to inspect the mauls generally.

Sixteen instructions were given for the defendant which covered every phase of the case and some were given which injected into the case issues not raised by the pleadings, nor supported by the evidence. Those relevant to the issues and supported by the evidence presented the defendant's side of the case as favorably as could have been done short of a positive instruction to find for the defendant. Defendant contends, however, that the instructions are inconsistent and contradictory. The inconsistencies and contradictions, if there are any, were brought about by the giving of erroneous instructions for the defendant. The plaintiff's instructions, with the exception of the error in the first one (noted above) are in accord with the pleadings, are supported by plaintiff's evidence, and, I think, properly declared the law of the case.

Plaintiff's counsel is accused of traveling outside of the record in his argument to the jury. The portion of his argument objected to was mostly an arraignment of one of the defendant's witnesses. The argument was heated and may have been unjustified; it may have had a tendency to prejudice the jury against the witness and cause it to disregard his testimony or to look upon it with suspicion and incredulity. The trial judge, who saw the witness and heard him testify, heard the remarks of the counsel and observed their effect upon the the jury, if they had any effect, was in much better

position than we are to determine whether or not the improper remarks were so prejudicial to defendant as to warrant the granting of a new trial. He refused to do so, and we do not think the facts shown in the bill of exceptions warrant us in reversing his ruling.

Discovering no reversible error in the record, the judgment is affirmed. All concur.