J. W. CHILTON, Respondent, v. THOS. HALSTEAD, Appellant.

Springfield Court of Appeals, July 7, 1910.

1. **REAL ESTATE BROKER: Fake Purchase by Agent: Sufficiency of Evidence: Instructions.** A real estate broker had been authorized to sell a tract of land for not less than a named price. He falsely represented that he was unable to sell the land for the price named and offered to buy it at a less price, which offer was accepted by the owner. Before this purchase and while acting as the owner's agent, the broker had secured a buyer for the land at a larger price than the one fixed in the agency agreement, and the agent sold the land and transferred the same to this purchaser. The owner sued for the difference between the price paid him by the agent and the price received by the agent, less the agent's commission. *Held,* that the evi-

dence was sufficient to justify the verdict for the plaintiff and that the instructions presented the true theory of the case and were favorable to defendant.

2. ———: ———: **Duties of Agent.** It is a real estate agent's duty to account to his principal for the full consideration which he receives for his principal's land, the sale of which he negotiates while acting as the agent for the owner. He cannot by a fake sale to himself for a less price and a subsequent sale to his prospective purchaser be permitted to retain the profit so made.

3. **EVIDENCE: Peremptory Instructions: Duty of Court.** It is only when there is an entire absence of testimony as to some allegation of the plaintiff's petition necessary to a recovery and where the facts leave no room for ordinary minds to differ as to the conclusions to be drawn therefrom that the court should instruct peremptorily.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*A. H. Livingston* and *J. N. Burroughs* for appellant.

(1) The contract and the correspondence show that plaintiff is not entitled to recover, therefore defendant's instruction No. 2, directing a verdict for him should have been given. Big 4 Realty Company v. Clark, 123 S. W. 95; Mo. Eidson Electric Co. v. Bry, 88 Mo. App. 136; Trust Co. v. York, 81 Mo. App. 342; Robinson v. Easton, 93 Col. 80, 27 Am. St. Rep. 167; Keene v. Demelwan, 172 Mass. 17, 51 N. E. 188.

*James Orchard* and *J. W. Chilton* for respondent.

(1) The giving of respondents instructions numbered 2 and 3 was not error. They were fully warranted by the law and the facts. An agent is never permitted to speculate on his principal's property, or make a profit thereon. Absolute good faith is required of an agent dealing with his principal. Bent v. Priest, 86 Mo. 482;

Grumley v. Webb, 44 Mo. 451; Carr v. Obsdell, 97 Mo. App. 331; Jacques v. Edgell, 40 Mo. 76; Eneau v. Rieger, 105 Mo. 659; Murdock v. Milner, 84 Mo. 96; 1 Am. and Eng. Ency Law (2 Ed.), 1071, 1072. (2) An agent cannot unite in himself the character of buyer and seller. 1 Am. and Eng. Ency. Law (2 Ed.), 1075, 1077; Brack v. Commission Co., 57 Mo. App. 605; Morgan v. Aldrich, 114 Mo. App. 700. (3) An agent cannot buy from his principal without making full disclosure to his principal of any propositions of purchase made to him, or any other pertinent fact to fully advise his principal. 1 Am. and Eng. Ency. Law (2 Ed.), 1081; Bell v. Bell, 3 W. Va. 183; Stoner v. Weiser, 24 Iowa 434; Mason v. Bannon, 62 Ills. 76; Jeffries v. Weister, 2 Sawy. (U. S.) 135.

NIXON, P. J.—This was an action instituted in the circuit court of Howell county upon a petition which alleged that plaintiff and defendant entered into a written contract whereby defendant became plaintiff's agent to sell 640 acres of land on a commission of five per cent of the amount realized. That on October 2, 1905, defendant sold the land to certain parties for $850. That defendant thereupon falsely represented to plaintiff that he was unable to sell the land for more than $525, concealing the fact of the sale for $850 from the plaintiff, and that plaintiff, relying upon defendant's false representations, was induced to accept from the defendant $525 for the land. Judgment was asked for $282.50. The answer was a general denial. On trial before a jury, plaintiff obtained a verdict for $282.50. The defendant below has appealed.

At the conclusion of all the evidence, the defendant offered a peremptory instruction which the court refused to give and this action of the court is assigned as error.

The contract, so far as material, is as follows:

"Authority to Sell.

"I hereby appoint and constitute Thos. Halstead, of West Plains, Mo., my agent to procure for me a purchaser or purchasers for, and to sell for me the following described property, to-wit: W. 1-2 of section 15, township 28, range 6, and S. 1-2 of section 5, township 30, range 4, Shannon County, Mo., upon the following terms, to-wit: One dollar per acre in cash. I agree, however, to sell above lands separately in two tracts of 320 acres each as Halstead may direct. They (meaning Halstead) are to use their best endeavor to find a purchaser or purchasers for said property, and have authority to sell same upon said terms. And I further agree that they shall have the right to purchase said property themselves upon the same terms. And whenever they shall find a purchaser or shall themselves purchase upon the above terms or any other more favorable terms that I may hereafter agree to they shall be entitled to the regular and usual commission of five per cent. In case of such sale or purchase by them I agree to furnish a good and perfect title and abstract showing the same.

"This employment and right is exclusive to the said Halstead & Company for a period of thirty days from date of this instrument.

"Signed this 14th day of July, 1905."

This contract expired and was extended for thirty days and was then verbally (indefinitely) extended by Chilton.

Plaintiff resided at Winona, Mo., and defendant at West Plains, Mo., and many letters between them appear in evidence. Two deeds, each for 320 acres, were executed by Chilton in blank and sent to the bank at West Plains with instructions to turn them over to Thos. Halstead upon receiving $320 from him for each deed.

Exhibit "O" is a letter from Halstead to Chilton dated August 24, 1905, in which Halstead enclosed the contract asking that Chilton extend the same for thirty

days. "I shall use my utmost endeavors to close this land out as early as possible. As I stated to you while at Winona, I think I have a deal already made for the W. 1-2 of section 15, and expect to close the matter just as soon as my party gets back from Colorado."

Exhibit "M" is a letter from Chilton to Halstead, dated September 9, 1905, in which he wrote: "You still have several days on your option, and I think from what you said you will dispose of the land before the option expires. But I suggest that you press the matter along on account of the circumstances, and dispose of it as soon as you can. Would you think it advisable for you to take it up yourself if you fail to trade within the limit."

Exhibit "I" is a telegram from Chilton to the First National Bank at West Plains, dated September 30, 1905: "Will accept $280 for W. 1-2 fifteen if paid immediately; bank notified by letter."

Exhibit "E" is a letter from Chilton to the First National Bank at West Plains, dated September 29, 1905, confirming the above telegram (which was sent the next morning).

Exhibit "G" is a letter from Chilton to the First National Bank at West Plains, dated October 2, 1905, directing the bank to turn over the deed to the S. 1-2 of section 5 to Halstead upon payment by him of $280.

Exhibit "R" is a letter from Halstead to Chilton, dated October 3, 1905: "This is to acknowledge receipt of your message of the 2d inst. stating that you would accept $280 for the south half of section five, township 30, range 4. Am also in receipt of your letter of same date confirming message. I have started in today to close up the deal for both half sections, and I will undoubtedly have you the money for same in the next two or three days at the outside. My parties getting this land are obligating themselves to me in the form of a contract that they will make the deal with me, and just as soon as the arrangement is signed up I will pay the bank the

money, and they will forward your draft for the two half sections at the same time. You can figure on receiving the money for both tracts before the week is out, and just as soon as these are closed out I should like for you to put something else before me for disposition at about the same figures I have disposed of these tracts for you, and I will get something else started for you. I can dispose of lots of land for you occasionally if the price is right."

Exhibit "L" is a letter from Halstead to Chilton, dated October 10, 1905, in which he wrote: "Everything is progressing nicely, and I should have had the arrangement here today, but for some cause it has failed to arrive. The matter will undoubtedly be around by tomorrow, so we can send you your money."

Exhibit "C" is a letter from Halstead to Chilton, dated October 13, 1905: "Am having a h— of a time with my deal; they find fault with the titles and everything else. I don't want to go into a law suit with them on the contract. I'll tell you what I'll do in order to get this thing wound up, Chilton. I will give you $525 for the two half sections and send you draft for same, if you will wire me just as soon as you receive this letter; and I think if you can, the best thing is to do it, and we'll wind this up and start on something else. Remember if you wire me you will take $525, a draft for the amount will follow on next train. Now, say you'll do this and let's close up. If you wire me you will take the $525, it will not be necessary for you to wire the bank to deliver me the papers on payment of the amount. The message you send me will be sufficient for the bank to deliver me the papers for $525."

Charles A. Bukey, testified by deposition that on *October* 13, 1905 (the date of Exhibit "C") as the cashier of the Parkersburg National Bank of Parkersburg, West Virginia, he collected and remitted two drafts to the First National Bank of West Plains, Missouri, each for $425, drawn on T. W. Jackson.

L. M. Catron testified that as the cashier of the First National Bank of West Plains, Missouri, he received on October 16, 1905, the money on two drafts for $425 each drawn on the Parkersburg National Bank. "Five hundred and twenty-five dollars was sent to J. W. Chilton by draft on October 17, 1905, and $269.15 was credited to Thos. Halstead." This draft to Chilton was identified and offered in evidence.

T. W. Jackson testified by deposition that he and E. F. Fuller bought the land through Thos. Halstead and that so far as he knew Halstead was acting as Chilton's agent; that they had no communication with Chilton. That after the deal was consummated he and Fuller sued Chilton on account of imperfections in the title, and that A. H. Livingston acted as their attorney.

A. H. Livingston testified without objection that as attorney for Jackson and Fuller he received a letter from Chilton, which had been misplaced or lost, in which Chilton said "he had sold the land directly to Thos. Halstead, and that Halstead was not his agent and he was not responsible for his acts; that we would have to look to him for all defects in the title. He denied explicitly that Halstead was his agent in the matter and said that he sold him the land for so much money."

J. W. Chilton, the plaintiff, testified that he "didn't know Halstead was selling it to anyone. I thought he was buying it himself."

This review of the evidence shows that the action of the trial court in denying the peremptory instruction was entirely proper. It is only when there is an entire absence of testimony as to some allegation of the plaintiff's petition necessary to a recovery and where the facts leave no room for ordinary minds to differ as to the conclusions to be drawn therefrom that the court should peremptorily instruct the jury. To pursue any other course would be to substitute the opinion of the court for that of the tribunal established by law for

the purpose of arriving at the facts. [Wilson v. Board of Education, 63 Mo. 137; O'Hare v. C. & A. R. Co., 95 Mo. 662, 9 S. W. 23; Bender v. St. L. & S. F. R. Co., 137 Mo. 240, 37 S. W. 132; Walsh v. Morse, 80 Mo. 568; Moody v. Deutsch, 85 Mo. 237.]

The rights of the parties in this controversy are to be determined by the written agreement hereinbefore set out. It is seen that this contract authorized the defendant to sell for plaintiff two tracts of land at $1.00 per acre, and was in force, as we have seen, at the time of the actual sale of the land. The commission named was five per cent and the minimum price named was $640 for the 640 acres. The evident purpose in naming this sum was to fix a minimum selling price. The contract impliedly provides for more favorable terms of sale; that is, that if the sale should be for less than $640, the consent of the plaintiff should first be obtained. It is to be noted that the contract nowhere provides that in case the agent should sell for a greater sum than $640 he should receive the excess for his services, much less that he should receive both such excess and the sum of five per cent on the amount of the purchase price. The contract also provides that the agent might at his option take the land himself upon the same terms. Under this construction, it became the duty of the agent in good faith to sell the land on the best terms he could get, but for a sum not less than $640 except he first obtained the consent of the plaintiff. But under the agreement he certainly had no authority to sell the land to other parties for $850, and conceal that fact (as shown in his letter of October 13th, the day the drafts were paid at Parkersburg, West Virginia) falsely representing, inferentially, that he could not make the sale, and thereby procure the land for himself for $525, when the two drafts for $425 each had been drawn on the purchasers in West Virginia and were on that very day paid.

The court gave the following instructions:

Chilton v. Halstead.

"1. If the jury find that the defendant was not the agent of plaintiff for the sale of the land at the time the sale in question, and that defendant negotiated with plaintiff as a direct purchaser, in that event defendant would not be guilty of fraud, although he may have previously sold or contracted the land to other parties for a larger sum than he paid to plaintiff, and you should find for defendant.

"2. The court instructs the jury that if you believe from the evidence that the plaintiff, J. W. Chilton, employed the defendant, Thos. Halstead, to sell lands described in plaintiff's petition, and that defendant sold said lands for $850, and represented to plaintiff that he could not sell the land at the price agreed upon, and told plaintiff that he, defendant, would buy the land himself at $525, and plaintiff relying upon said representations, agreed to and did accept $525, believing he was selling said land to defendant, the plaintiff is entitled to recover the difference between $525 and $850 less five per cent commission for his services in the sale of said lands, together with six per cent interest per annum from the date defendant received the money.

"3. The court instructs the jury that if you believe from the evidence that the plaintiff, J. W. Chilton, employed the defendant, Thos. Halstead, as his agent to sell the lands in question for one dollar per acre, or $640, and allow defendant five per cent commission, and you also find that defendant sold said lands for $850, then it was the duty of the defendant to account to the plaintiff and pay plaintiff said sum of $850, realized from the sale of said land, less five per cent commission for his services in the sale of said lands."

These instructions contain the true theory of this case, and if any error was committed by the court it was in defendant's favor. We have examined the other points raised by the appellant and find them to be without merit. The judgment was for the right party and is affirmed. All concur.