## GRAND TRUNK WESTERN RAILWAY COMPANY v. MELROSE.

### [No. 20,545. Filed June 6, 1906.]

1. PLEADING. — *Complaint.*—*Railroads.*—*Master and Servant.*— *Defective Works and Ways.*—*Notice.*—A complaint by an engineer showing that defendant railroad company maintained a switch on which it frequently set box-cars; that defendant left

Grand Trunk, etc., R. Co. *v.* Melrose—166 Ind. 658.

one thereon, unguarded and unfastened; that the wind started same and moved it out upon the main track, whereupon the plaintiff, without any knowledge thereof, struck it with his engine, thereby injuring him; that the derailing apparatus of such switch was out of repair and that defendant knew of such facts, sufficiently shows knowledge on defendant's part. p. 662.

2. PLEADING.—*Complaint.—Notice.—How Alleged.*—In a complaint for personal injuries it is not necessary with each averment of negligence to allege defendant's knowledge, a general averment thereof as to all being sufficient. p. 665.

3. SAME.—*Complaint.—Railroads.—Master and Servant.—Ways and Works.—Discontinuing.*—A complaint by an engineer showing that defendant railroad company maintained a switch provided with a derailing device; that without plaintiff's knowledge it discontinued the use of such device; that it set a box-car on such switch and left it unguarded and unfastened; that such car blew upon the main track where plaintiff's engine collided with it, causing his injury, states a cause of action. p. 665.

4. MASTER AND SERVANT.—*Assumption of Risk.—Discontinuance of Appliances.*—The servant does not, without notice, assume the risk of increased danger caused by the master's discontinuance of appliances to which the servant is accustomed and to which he has adapted his work. p. 667.

5. SAME.—*Railroads.—Assumption of Risk.—Contributory Negligence.—Question for Jury.*—Whether an engineer assumed the risk of a collision with a box-car set upon a switch provided with a derailing device, which device, without plaintiff's knowledge, had been spiked and rendered inoperative, or was guilty of contributory negligence in colliding therewith on a dark, stormy night, such box-car having been moved by the wind upon the main track, are questions for the jury. p. 668.

6. TRIAL. — *Instructions. — Railroads. — Master and Servant. — Negligence.—Ordinary Care.*—An instruction, in an action for personal injuries caused by a box-car's being moved, by the wind, from a switch provided with a derailing device onto the main track, thereby causing a collision and plaintiff's injuries; that plaintiff should recover on proof that such derailing device was defective or not in working order; that plaintiff was ignorant thereof and not contributorily negligent, is erroneous, since it excluded consideration of defendant's reasonable care in providing other methods of securing such cars on such switch. p. 668.

7. RAILROADS.—*Negligence.—Derailing Device.—Stop Blocks.*—It is not negligence *per se* for a railroad company to fail to maintain derailing devices or stop blocks. p. 671.

Grand Trunk, etc., R. Co. *v.* Melrose—166 Ind. 658.

8. NEGLIGENCE.—*Proximate Cause.*—*Railroads.*—*Derailing Device.*—Plaintiff must establish that the failure of defendant to maintain a derailing device was the proximate cause of his injuries before he can recover for such alleged negligence.    p. 671.

9. TRIAL.—*Instructions.*—*Ambiguous.*—*Railroads.*—*Negligence.*—An instruction setting out the essential elements necessary for plaintiff to prove "in order that he may recover" and "then, in addition, if you find" that he was not guilty of contributory negligence, he should recover, is misleading.    p. 671.

10. SAME.—*Instructions.*—*Notice.*—*Master and Servant.*—*Defects.*—An instruction, in an action by the servant for injuries caused by the master's negligence in providing an unsafe place in which to work, which merely negatives plaintiff's actual knowledge of the defect, is erroneous.    p. 671.

11. NEGLIGENCE. — *Contributory.*—*Assumption of Risk.*—*Knowledge.*—Knowledge of an alleged defect must be negatived by proof by the servant on the question of the assumption of the risk, but must be established by defendant as to contributory negligence.    p. 671.

From Laporte Circuit Court; *John C. Richter,* Judge.

Action by Robert Melrose against the Grand Trunk Western Railway Company. From a judgment on a verdict for plaintiff for $21,170, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Samuel Parker,* and *Anderson, Du Shane & Crabill,* for appellant.

*Frank E. Osborn* and *Brick & Bates,* for appellee.

HADLEY, J.—This action was brought by the appellee, a locomotive engineer, to recover damages for personal injuries received by him while in the employ of the appellant. The accident, in which appellee was injured, occurred on April 25, 1902. At the time he was in charge of the engine which was drawing a passenger-train from Chicago to Battle Creek, Michigan, over appellant's railroad, which runs through the village of Haskell, Indiana. The train was due at Haskell at 10:20 p. m., but was a few minutes behind time. A violent wind and rain storm was

prevailing at Haskell at that time. The train passed through the village and was moving rapidly, when, at a point about two miles east of that station, it collided with an empty box-car standing on the track. The collision caused the engine to leave the track and fall on its side. The appellee did not escape from the engine, but went over with it, was caught and held in the wreckage, and thereby sustained the injuries of which he complains. At Haskell and beyond the railroad runs almost due east and west. At the place named, on the north side of the main track, appellant has a side-track 1,800 feet long that connects at the east end with the main track. This side-track was used, among other things, for the storage of cars. For three or four years prior to the middle of February, 1902, this siding had a derailing switch connecting it, at the east end, with the main track. At the time of the accident, owing to accumulations of ice and snow, rendering the switch difficult of operation, the loose rail of the derailing device was spiked up to the rail on the main track and the derail was thereby rendered inoperative. At some time shortly before the accident, an empty box-car was run in on this siding and left standing on the side-track. On the day of the accident a freight-train crew in the employ of appellant had occasion to pull this car out of the siding onto the main track in order to get some cars from behind it. After getting the other cars out, this empty box-car was "kicked" in on the siding and ridden to its place by a brakeman of the freight-train crew, who applied the brake, stopped it and left it. The point on the siding where the box-car was left was about sixteen inches lower than the east end of the siding where it connected with the main track, and about four hundred feet distant therefrom. At 9:50 p. m. of April 25, 1902, the box-car was still on the side-track and the main track was clear. At that time a freight-train running east had passed Haskell station, and, proceeding eastward, passed the place where the collision

occurred. When appellee arrived with his train the storm that was then raging at that place blew from a southwesterly to a northeasterly direction, did considerable damage to buildings, trees, fences and telegraph lines in the vicinity of Haskell, and was raging at the time of the collision. After the passage of the freight above mentioned, from some cause, the box-car alluded to above was passed out of the siding onto the main track and driven eastward, and was overtaken and struck by appellant's train, which caused the accident. Such of the above facts as are relied upon by plaintiff as constituting appellant's liability, are stated in four different ways, in so many paragraphs of complaint, each paragraph proceeding upon the theory that the box-car was blown from its place on the siding out onto the main track and to the point where the collision occurred. Each paragraph of complaint was held to be good on demurrer and appellant answered the general denial. There was a verdict and judgment for appellee. The overruling of the several demurrers to the complaint and appellant's motion for a new trial give rise to the questions presented.

(1) The principal objection urged against the first and second paragraphs is the want, in each, of a sufficient averment that appellant had knowledge, either actual or imputed, that the box-car was left on the siding unfastened and unguarded, and liable to be forced out onto the main track; and knowledge that the main track was obstructed with the box-car before the arrival of the express driven by the plaintiff. The discussion here invited by counsel for appellant, and which has heretofore had extended consideration by this court, involves the questions—whether it is necessary to the complaint in such cases to allege knowledge in the master, when it is shown by averments that the asserted defective condition of the working place, and upon which the negligence relied on is based, was created by the affirmative act or omission of

the master and plainly open to observation, or whether the rule requiring averments of knowledge in the master applies only to latent defects and perils. For an elaborate collection of cases upon these subjects, see *Indiana, etc., Oil Co.* v. *O'Brien* (1903), 160 Ind. 266; *Evansville, etc., R. Co.* v. *Duel* (1893), 134 Ind. 156.

These interesting questions become unimportant here because, as we view the first and second paragraphs, knowledge in the defendant is sufficiently alleged to withstand a demurrer. Among other things it is averred in these paragraphs "that said side-track was so constructed, and connected and operated with defendant's main track, that cars left or stored upon said side-track, would, when pulled or pushed by a locomotive engine, or when moved in any other manner, pass from said side-track to and upon the main track." It is further alleged "that, in order properly to protect the public in the use of its said railway line and to guard against accidents and collisions with trains upon its main lines, and to protect the lives and limbs of its employes in charge of the trains operated upon said railway lines, it is, and ever since defendant has owned and operated said railway line it has been, necessary that defendant use care in the use and operation of its switches and side-track aforesaid to prevent collisions of cars with trains running upon its main track, and that no cars be placed upon said side-track or be permitted to stand thereon in such manner that trains passing upon and along its main line might collide with said car, or in such a manner that said car might be pushed or forced or in any other way run out of said side-track to and upon the main track of said defendant company, and thereby be permitted to collide with trains being operated upon said main line; that on said date the defendant had full knowledge of all of the matters and things averred in the premises; that on said April 25, 1902, and before the time for the train and engine operated by the plaintiff was due to pass said sta-

tion aforesaid and to pass over that part of defendant's said main line east of Haskell aforesaid, the defendant, by its representatives, agents, employes and servants in charge of a train of freight-cars on its said railroad, placed and caused to be placed upon its aforesaid side-track at and near the aforesaid station of Haskell, an empty car, well knowing at the time that plaintiff was operating and running its train as aforesaid upon its main line and track as aforesaid, and well knowing that if said car should, in any manner, leave or be permitted to leave said side-track, and in any manner or way be removed or permitted to be removed, or pushed or pulled from said side-track to and upon the main line of said defendant company, that said car would collide with the engine and train in plaintiff's charge, and that great loss of life and personal injury would be the probable result thereof."

It is also shown that the defendant had used the side-track at Haskell for the setting and storage of cars for more than a year, and had full knowledge of all the facts in the premises alleged in the several paragraphs. The general averment of knowledge is distributive in its meaning, and, we think, fairly relates to the nature of the side-track, its relation to the main track, the construction, office and operation of the derailing device, the spiking and fastening of the derail so it could not be used to prevent the passage of cars from the side to the main track; that the freight-car was left on the side-track unguarded and that without the use of the derail cars stored or set on the side-track, and left unfastened and unguarded, were liable to be moved by the wind or other power out onto the main track. The matter of the defendant's knowledge is further shown by the averment that the defendant failed to keep the main track clear, "well knowing" at the time that the train in charge of the plaintiff would pass, and "well knowing" that if any substantial obstruction was permitted on the main track a serious collision would occur, and, "with full

knowledge of the facts alleged in the premises, permitted an empty freight-car to drift out of the side-track onto the main track." It is not necessary that the defendant's knowledge should be specifically averred to each particular item. *Evansville, etc., R. Co. v. Krapf* (1896), 143 Ind. 647, 655; *Louisville, etc., R. Co. v. Jones* (1886), 108 Ind. 551, 555. The allegations concerning the defendant's knowledge contained in the first and second paragraphs of the complaint were sufficient to call for an answer, and if indefinite or unsatisfactory to the defendant, it had its ample remedy by motion. No other objection to these paragraphs is pointed out, and we think each was clearly good.

2.

(2) The third and fourth paragraphs of the complaint are closely allied, and differ from the first and second in predicating actionable negligence upon the defendant's failure to maintain, in good repair, a derailing device previously constructed by it on the east end of the side-track. It is averred that the purpose of the derail was as a safety device to prevent cars or trains from running from the side-track to and upon the main track, and was so arranged that cars could not possibly pass from the side-track to the main track without some one in charge to operate the derail; that said derail was constructed, kept in repair and operated by the defendant for many years as a part of its railroad system, and known to and relied upon by the plaintiff, but his duties as the engineer of an express train did not require him to run his train into or over said side-track, and he did not know or have the means of knowing that said derail had been spiked and fastened and rendered useless, and he fully believed it was in good working order; that about two months prior to April 25, 1902, the defendant negligently failed to maintain the derail in working order, and negligently spiked and fastened it as a part of the continuous rail of the side-track, so that said derail could not be disconnected to prevent cars on the

3.

siding from being forced out on the main track, and ever since said time the defendant had negligently suffered the derail to remain out of repair and out of use, and in a condition to permit cars to run from the side-track onto the main track; that before the time the train operated by the plaintiff was due to pass Haskell, the defendant caused to be run in from the main track onto the side-track an empty freight-car, and negligently left the freight-car standing on the side-track unfastened, "well knowing at the time that the aforesaid derail switch arrangement had been spiked and fastened," thereby rendering the switch in a condition that cars could run out of the siding onto the main track, and negligently failed to fasten, or in any manner to secure, said freight-car so as to prevent its leaving the side-track and running out upon the main track; that the defendant had full knowledge of all the matters averred in the paragraph.

In addition to the allegations of the third, it is averred in the fourth paragraph that the defendant negligently left the freight-car standing upon the siding, "well knowing at the time that the derail had been spiked and fastened, and was not in working order, and that the side-track was so connected with the main track that cars could pass from the side to the main track, and negligently failed to fasten, or in any manner to secure, said car so as to prevent it from leaving the side-track, and negligently failed to repair the derail and put the same in working order so as to prevent the wind, or other power, from forcing said car out upon the main track. The defendant at said time had full knowledge of all the matters and things averred in this paragraph of complaint."

We are unable to see how the general rule asserted by appellant's counsel can help the client in this case, namely, that the master is not bound to furnish the servant with the newest and best safety devices, nor any particular kind, but that the master's duty is fulfilled when he furnishes a

reasonably safe place to work, and employs such appliances as are reasonably safe for the work designed. As respects the assumption of the risk, the question here is not whether the defendant was bound to put in, and keep in repair, the derails to keep stored and detached cars from being fortuitously forced out onto the main track. The fact is that the defendant did put them in, and had maintained them as a safety device for many years before the plaintiff's injury. The question presented, therefore, is, can the company, after having adopted and successfully used the derails for a long period, permit them to get and remain out of working order, for an unreasonable length of time, or remove or destroy the device altogether, without substituting other efficient means of escaping the same peril, and be unanswerable to an engineer injured by the absence of the derail, who had knowledge of the device, and who was relying, and had the right to rely, upon its being in working order, at the time of his injury.

The law did not require the company to put in the derails, but it did require it to employ such means at that, and all other sidings, as would make the operation 4. of the railroad reasonably safe against the escape of derelict cars from the siding to the main track. The means was a matter of choice, within the limits of reasonable safety, but when the company elected to put in derails as its chosen safety device against such danger, it was, while it pretended to maintain that system, as much duty bound to keep the derails in proper working order as it was to keep any other part of its track, or appliances, in proper condition. A workman going into the employ of a railroad company is bound to take notice of all the apparent situations, conditions and appliances, in ways and working places, that have been provided by the company, and is required to assume the risk of all the usual dangers that are incident to such places and conditions in conducting the business of the railroad. And when such conditions and

appliances have been employed by the company for many years, as alleged, and the workman has taken notice thereof, and shaped his conduct with respect to care in accordance therewith, it would be unreasonable and unjust to permit the company to make a change, or permit the same to become and remain out of working order, and thus increase the hazard of the employment, without notice to those exposed; and it will not, therefore, do to say that an employe injured by such new and unknown peril had assumed the risk. *Hunt* v. *Kane* (1900), 100 Fed. 256, 40 C. C. A. 372; *Bender* v. *St. Louis, etc., R. Co.* (1897), 137 Mo. 240, 250, 37 S. W. 132; *Sherman* v. *Chicago, etc., R. Co.* (1885), 34 Minn. 259, 25 N. W. 593.

Both the third and fourth paragraphs of complaint show that the plaintiff knew of the derailing device and that when in working order no car could pass to the main track from the siding without being accompanied by some one to set and adjust the derail; that the plaintiff passed the point in the night, had never used the siding and had no knowledge, or means of knowledge, that the device was not in working order, or that the company had abandoned it. Under such facts it cannot be said, as matter of law, that the plaintiff, even though he approached the place in the face of a violent storm, took upon himself the risk of an unfastened car's being driven by the wind from the siding onto the main track, or that he was guilty of contributory negligence for not observing, on account of the storm, increased care to avoid accident from such escaped car.

The demurrer to each the third and fourth paragraphs of the complaint was properly overruled.

(3) It is earnestly contended that the first and second instructions given by the court upon the request of the plaintiff were erroneous and harmful to appellant. In the first the court called attention to the plaintiff's theory of the case, and in the second to the

facts the plaintiff should establish to entitle him to recover, both of which, in substance, follow: First. The plaintiff sues for damages for injuries which he claims were caused by reason of the negligent failure of the company properly to maintain a derail switch arrangement, by reason of which negligence an empty box-car was permitted to blow out onto the main track and cause the injury. Second. The plaintiff has the burden of proving all material allegations of his complaint. To recover he must prove that when injured he was in the employ of the company, and that the injury was the result of the negligence of the defendant, in its failure properly to maintain the derail switch arrangement and in allowing an empty box-car to be upon its main track and cause the collision. "The essential elements to be proved by the plaintiff in order that he may recover are, that he shall establish to your satisfaction that said derail switch arrangement was defective, or not in working order; that the plaintiff did not know of said condition, and that the company had notice or knowledge of the same, or that the non-working condition of the derail had existed for such a period of time prior to the injury that in your judgment the company ought to have known of it. Then, in addition, if you find that the plaintiff himself was not guilty of negligence contributing to the injury, he has made out his case and should recover." In other words, the jury is informed that the plaintiff has made out his case and should recover if he has satisfactorily established three things: (1) That the derail switch was defective, or not in working order; (2) that the plaintiff did not know of the condition; (3) that the defendant did know, or ought to have known it.

We do not see how the last instruction can be sustained. It implies the absolute duty of the railroad company to maintain the derail in working order. It impliedly denies the right of the company to employ any other kind of device, however efficient, and approved by railroad experts,

to prevent cars from being blown out of the siding. It implies that the failure to keep the derail in working order was conclusive evidence of the company's negligence. It is entirely too narrow. In effect it takes the question of defendant's negligence from the jury.

There was evidence tending to show that the box-car, after being placed on the side-track, was so locked and fastened by the brake as to render it immovable by the wind, except by an unusual and extraordinary wind storm. Under this evidence, assuming that the derail was out of working order—the company was entitled, on the subject of its negligence, to submit to the jury the question, whether the manner in which the box-car was fastened and secured on the side-track was such reasonable precaution against the car's being forced out of the siding by the wind, as would amount to ordinary care under all the facts and circumstances existing at that particular siding.

The master owes to his servant ordinary care to provide a reasonably safe working place. But as a rule he is not required to adopt any particular mode of construction, kind of device, or appliance, to be in the exercise of ordinary care. The test generally is, not whether this or that kind of means has been adopted, but whether, with the method of construction, or particular device or appliance employed, the place, under all the circumstances of the case, is reasonably safe for a performance of the duties of the employment. *Wabash R. Co. v. Ray* (1899), 152 Ind. 392; *Chicago, etc., R. Co. v. Driscoll* (1898), 176 Ill. 330, 52 N. E. 921; *Kern v. DeCastro, etc., Refining Co.* (1890), 125 N. Y. 50, 25 N. E. 1071; *Bohn v. Chicago, etc., R. Co.* (1891), 106 Mo. 429, 17 S. W. 580; *Hewitt v. Flint, etc., R. Co.* (1887), 67 Mich. 61, 34 N. W. 659; *Norfolk, etc., R. Co. v. Cromer* (1903), 101 Va. 667, 44 S. E. 898; Labatt, Master and Servant, §35; 3 Elliott, Railroads, §1272; *Sheets v. Chicago, etc., R. Co.* (1894), 139 Ind. 682, 689.

It is not negligence *per se* to fail to maintain a derailing device. *Norfolk, etc., R. Co.* v. *Cromer, supra.* It is not always negligence to fail to provide a side-track with stop blocks. *Hewitt* v. *Flint, etc., R. Co., supra.*

It is also essentially necessary, in such cases, that the plaintiff prove that the injuries complained of resulted proximately from the alleged negligence of the defendant. *Baltimore, etc., R. Co.* v. *Young* (1896), 146 Ind. 374, 376, and cases cited.

In the former part of the instruction the court directed, in a general way, that the plaintiff must prove that his injuries resulted from the negligence of the railroad company in failing to maintain the derail, but this element of the case is wholly omitted from that part of the instruction in which the court undertakes to sum up the particular facts that will entitle the plaintiff to recover. The language is: "The essential elements necessary to be proved by the plaintiff in order that he may recover are, * * * . Then, in addition, if you find that the plaintiff himself was not guilty of negligence contributing to the injury, he has made out his case and should recover." The very best that may be said of the instruction in this particular is that it is ambiguous and calculated to confuse and mislead the jury.

Another objection to the instruction, equally fatal, is found in the second essential element enumerated, namely, the limitation of the plaintiff's knowledge, to actual knowledge. The words of the court are: "That the plaintiff did not know of such condition."

So far as the question related to the plaintiff's contributory negligence the fact of his knowledge, actual or constructive, was matter of defense, and not necessary to the plaintiff's right of action, but as showing his right to recover, and that he did not take upon himself the risk of the impaired derails, as a peril ordi-

narily incident to the employment, or as one so apparent and so long existing that he should have known it by the exercise of ordinary care, and held to have assumed it by continuing in the service, the want of knowledge, both actual and imputed, became material facts for him to establish. *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, 102 Am. St. 185, and cases cited; *Indiana, etc., Oil Co.* v. *O'Brien* (1903), 160 Ind. 266, and cases collated; *Pennsylvania Co.* v. *Ebaugh* (1899), 152 Ind. 531; *Chicago, etc., R. Co.* v. *Glover* (1900); 154 Ind. 584; Wood, Master and Servant, §422.

For error of the court in giving instruction two, the judgment must be reversed. Numerous other questions are presented, relating to the admission and exclusion of evidence, but as such questions are not likely to arise again upon a retrial of the case, we omit their consideration.

Judgment reversed, and cause remanded, with instructions to grant the appellant a new trial.