## CHICAGO AND ERIE RAILROAD COMPANY *v.* SCHENKEL.

[No. 8,092. Filed February 3, 1914. Rehearing denied June 26, 1914. Transfer denied November 17, 1914.]

1. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Sufficiency.—Assumption of Risk.*—A complaint by a railroad switchman for injuries sustained while in the performance of his duties, alleging that it was the custom of defendant to block the frogs in its switch yard, which was known to plaintiff and relied upon by him, that in obedience to an order of the yard foreman to close the knuckle on a standing car, plaintiff stepped upon the track at the end of said car, which was the usual and customary way in proceeding to obey such order, and that in so doing he stepped into a frog which defendant had negligently failed to block, whereby his foot was caught and held until he was struck and injured by approaching cars, and that plaintiff had no knowledge that such frog was not blocked, nor of its defective and dangerous condition, was not insufficient as showing that the cause of the injury was one of the ordinary risks incident to plaintiff's employment, and assumed by him, or as showing that plaintiff was guilty of contributory negligence. p. 178.

2. TRIAL.—*Verdict.—Answers to Interrogatories.*—In determining the sufficiency of the jury's answers to interrogatories to over-

come the general verdict, the court will consider only the general verdict, the interrogatories and answers and the pleadings. p. 181.

3. TRIAL.—*Verdict.*—*Answers to Interrogatories.*—All reasonable presumptions are indulged in favor of a general verdict, which finds every material fact in favor of the prevailing party, and nothing is presumed in favor of the jury's answers to interrogatories, though they are to be reasonably construed. p. 181.

4. TRIAL.—*Verdict.*—*Answers to Interrogatories.*—Where the apparent conflict between the general verdict and the answers to interrogatories may be explained and removed by any possible evidence admissible under the issues, or the answers are contradictory of each other, a motion for judgment on the answers should be overruled; but if such answers show a failure to prove a fact essential to the verdict, or establish a fact which as a matter of law defeats recovery by the one for whom the general verdict was rendered, an irreconcilable conflict is shown which requires a judgment on the answers notwithstanding the verdict. p. 181.

5. MASTER AND SERVANT.—*Injuries to Servant.*—*Assumption of Risk.*—*Answers to Interrogatories.*—Where the complaint alleged that it was defendant's custom to block the frogs in its switch yard, and that, unaware of defendant's negligence in failing to block the particular frog plaintiff, a switchman, pursuant to an order to close the knuckle on a standing car, and in accordance with the usual and necessary practice in carrying out such an order, stepped upon the track at the end of the car, and that in so doing his foot was caught and held in the frog, whereby he was struck by approaching cars, answers by the jury to interrogatories showing that an order was given plaintiff to arrange the coupling apparatus so that it would not couple when the car was "bumped" by some approaching cars, that there was an arrangement whereby the coupling pin could have been raised so the car would not have coupled when bumped, which could have been operated without going upon the track, and that plaintiff could have seen the frog and its condition, had he looked, and that about one-half the frogs in defendant's yards were blocked, while the others were not, etc., were not sufficient to overcome a general verdict for plaintiff, as showing that plaintiff assumed the risk which caused his injury. p. 181.

6. MASTER AND SERVANT.—*Injuries to Servant.*—*Contributory Negligence.*—*Answers to Interrogatories.*—In an action by a railroad switchman for injuries caused by his foot being caught in a frog, whereby he was struck by approaching cars, where the complaint alleged that plaintiff went upon the track pursuant to an order to close the knuckle on a standing car so that it would not couple when bumped by the approaching cars, the fact that

the jury's answers to interrogatories showed the existence of a device whereby the coupling pin could have been raised without going upon the track, so that the car would not couple when bumped, does not show that plaintiff was guilty of contributory negligence in not using such device, in the absence of a showing that it was not necessary to go on the track to close the knuckle as alleged, and in view of the fact that evidence was admissible to show that there was some practical reason for closing the knuckle rather than raising the coupling pin, and to show that the location and speed of the approaching cars were such as to make the way chosen reasonably safe and proper, but for the unblocked condition of the frog. p. 184.

7. MASTER AND SERVANT. — *Railroads.* — *Negligence.* — *Failure to Block Frogs.*—While railroad companies are not in all cases guilty of actionable negligence in failing to block frogs, there are cases in which they may be liable for such failure. p. 186.

8. MASTER AND SERVANT.—*Injuries to Servant.*—*Assumption of Risk.* — *Contributory Negligence.* — *Evidence.* — *Jury Question.* — Where the evidence is susceptible to different reasonable inferences as to whether there was an assumption of risk or contributory negligence, the question is for the jury under proper instructions; hence, where the evidence was sufficient to warrant the inference that a railroad switchman, who was injured by his foot being caught in an unblocked frog, had not assumed the risk and was free from contributory negligence, the verdict of the jury was conclusive. p. 186.

9. MASTER AND SERVANT.—*Injuries to Servant.*—*Railroad Employe.*—*Evidence.*—*Communication to Railroad Surgeon.*—*Admissibility.*—In a railroad switchman's action for personal injuries, a statement relative to the time, place and manner of the injury, signed by plaintiff and certified by the attending surgeons, who were in the employ of the railroad company, and whose report to the company was attached thereto, was properly excluded on the objection of plaintiff that it was a confidential communication. p. 188.

10. MASTER AND SERVANT.—*Injuries to Servant.*—*Railroad Employe.*—*Communication to Railroad Surgeon.* — *Admissibility.* — While some latitude must necessarily be given to a trial court in determining whether the statement of one injured by a railroad accident, made under circumstances rendering it a statement by both the injured party and the attending surgeon, comes within the class of privileged communications, such statements, made to or by physicians employed by a railroad company while attending an injured party shortly after his injury, are to be closely scrutinized in determining the question of their admissibility. p. 189.

From Wabash Circuit Court; *Francis E. Brown,* Special Judge.

Action by Edward Schenkel against the Chicago and Erie Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*W. O. Johnson, Ulric Z. Wiley, Walter M. Johnson, Charles K. Lucas* and *Walter G. Todd,* for appellant.

*C. W. Watkins, Charles A. Butler* and *D. F. Brooks,* for appellee.

FELT, J.—Appellee recovered judgment against appellant for personal injuries. On appeal from this judgment the errors assigned and duly presented by the briefs call in question the action of the court in overruling the demurrer to the first paragraph of appellee's amended complaint and also to the fourth paragraph of amended complaint; overruling appellant's motion for judgment on the answers of the jury to the interrogatories, for a new trial and in arrest of judgment.

Omitting the formal averments, and details about which there is no controversy, the gist of the first paragraph of amended complaint is that appellee was employed by

1. appellant as a switchman and at the time of his injury was working as such under the yard foreman in appellant's switch yards in Huntington, Indiana; that at that time and prior thereto it was the custom and practice of appellant to block the frogs in said yard; that appellee knew of said custom and relied thereon; that on November 15, 1906, while working as aforesaid he was ordered by Ed Maloney, the yard foreman, to close the knuckle on a car standing on track No. 9 in said yard so that it could be shoved along the track without coupling; that on receipt of said order he immediately stepped to the end of the car to close said knuckle, which was the necessary and customary way of obeying such order; that while so doing he stepped into an unblocked frog which appellant had negligently

failed to block and his foot was thereby caught and held until he was struck and injured by the approaching cars; that he did not know at the time he was injured or at any time prior thereto that there was no block in said frog nor that it was in a defective and dangerous condition. The fourth paragraph of amended complaint is substantially the same as the first except it alleges that appellant assigned a particular employe to do the work of blocking the frogs in said yard and shortly before appellee's injury, without his knowledge thereof, negligently stopped the work of repairing and blocking said frogs and did not notify appellee of its change of policy in regard to such repairs.

Appellant insists that each paragraph of complaint is insufficient because the facts averred show that the cause of appellee's injury was one of the ordinary risks incident to his employment and was therefore assumed by him. Also that it affirmatively appears from the complaint that appellee was guilty of negligence which contributed to his alleged injury. Each paragraph of complaint is sufficient to state a cause of action against appellant and we do not deem it necessary to set the averments out in full or to enter into a detailed discussion of the reasons for this conclusion because of the similarity of the complaint to one held good by a recent decision of our Supreme Court. *Grand Trunk, etc., R. Co. v. Poole* (1911), 175 Ind. 567, 93 N. E. 26.

The substance of the jury's answers to the interrogatories is as follows: That appellee was employed by appellant as switchman in Huntington yards for eleven months prior to his injury on November 15, 1906; that there were a large number of tracks in said yards used for storing, switching and repairing cars; that in moving southward or eastward on the lead to the middle yard there was a switch connecting with the repair track running to the east and after passing this there was another switch connecting with track No. 9, which ran to the south; that there were frogs connected with said switches; that on the morning of Novem-

ber 15, 1906, appellee was working with the switching crew in said yards; that a car was run in on track No. 9 which stopped before going far enough to clear the other tracks; that the foreman of the switching crew desired to bump this car without coupling onto it and to send it further along on track No. 9; that there was an engine with about fifteen cars attached to it moving toward said car on track No. 9 at the rate of three or four miles per hour; that appellee was then standing in a clear space and the foreman of the crew called or signalled him to arrange the coupling apparatus so that the cars would not couple; that there was a lever on the stationary car nearest where appellee was standing which connected with the coupler and raised the coupling pin so that it would not couple to another car when "bumped"; that appellee could have operated this lever without going upon the track and he would have been in a safe position while so doing; that appellee entered upon the track in front of the moving cars to arrange the coupler on the stationary car with his hands so that it would not couple; that rails, a switch point and a frog were near where he entered on the tracks; that he could have seen the frog and its condition had he looked; that he fell in front of the moving train and the accident occurred about 10 o'clock in the morning; that the frog near where appellee was injured was not blocked during the year 1906; that during said year about one-half of the frogs in Huntington yards were blocked and half were not blocked; that appellee did not know the general condition of the tracks and frogs in said yards during the year 1906, prior to his injury; that appellee at the time of his injury was in possession of the normal faculties of hearing and seeing.

It is contended by appellant that the foregoing answers of the jury are in irreconcilable conflict with the general verdict; that they show clearly that appellee was guilty of negligence which contributed to his injury and show affirmatively that the cause of his injury was open and obvi-

ous and was one of the ordinary risks incident to his

2. employment and was assumed by him. It is a familiar and oft repeated rule, that in passing upon the question of the sufficiency of such answers to overcome the general verdict, the court will consider only the general verdict, the interrogatories and answers and the plead-

3. ings. The general verdict finds every material, issuable fact in favor of the prevailing party. All reasonable presumptions are indulged in favor of the general verdict and nothing is presumed in favor of the answers to the interrogatories, but they should be fairly and rea-

4. sonably construed. If the apparent conflict between the facts found by the general verdict and the answers to the interrogatories may be explained and removed by any possible evidence admissible under the issues, the motion for judgment on the answers to the interrogatories should be overruled. If answers are contradictory, they nullify each other and have no effect on the general verdict.

If however, when so considered, the answers show a failure to prove a material fact upon which the plaintiff's right of recovery depends, or establish a material fact or facts, which as a matter of law, defeat the plaintiff's recovery, then the answers are in irreconcilable conflict with the general verdict and the motion should be sustained. *Chicago, etc., R. Co.* v. *Hamerick* (1912), 50 Ind. App. 425, 439, 96 N. E. 649; *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662, 64 N. E. 92; *Wabash R. Co.* v. *McNown* (1913), 53 Ind. App. 116, 99 N. E. 126, 100 N. E. 383.

Appellant's contention here is similar to the objections urged to the complaint, that the answers conclusively show that the cause of appellee's injury was a risk assumed

5. by him and that he was guilty of negligence contributing to his injury. The complaint charges that it had been the practice and custom of the company to block the frogs in the switch yard where appellee was injured; that appellee knew of such custom and relied thereon; that

appellant knew of the dangerous and defective condition of the frog that caused the injury, or by the exercise of reasonable care could have known thereof, in time to have blocked it before appellee's injury but negligently failed so to do; that appellee did not know that said frog was unblocked or dangerous prior to his injury; that his superior officer directed him "to close the knuckle" and in order to do so it was necessary and customary to step from the side of the end of said car to the center of the end thereof; that "said knuckle can not be reached or controlled in any other way"; that in obedience to his orders aforesaid appellee stepped between the rails to close said knuckle and while so engaged in the line of his duty, without fault on his part, stepped into the "Y" of said unblocked frog, which caught and held his foot, and while trying to extricate his foot therefrom he was struck by said train of cars and injured. The general verdict finds that the appellant was negligent as charged in the complaint; that its negligence was the proximate cause of appellee's injury; that appellee did not assume the risk which resulted in his injury and was not guilty of negligence contributory thereto. It is contended by appellant that the answers showing appellee's opportunity of knowing the conditions of the yards and his familiarity with the tracks and the switches and the answers showing that he could have seen the frog and its condition had he looked, are in irreconcilable conflict with the general verdict and establish the proposition that he assumed the risk which resulted in his injury. Assumption of risk which will defeat a liability for actionable negligence depends wholly upon the servant's knowledge, actual or constructive, of the existence of the danger which caused his injury. *Vandalia Coal Co.* v. *Price* (1912), 178 Ind. 546, 97 N. E. 429. Keeping in view the allegations of the complaint showing a custom and practice of appellant to block frogs in its yards where appellee was injured, his reliance thereon, and the charge that it was necessary for him to step to the end

of the car, between the tracks to comply with the order he was obeying when injured, it is apparent that the answers aforesaid do not overcome the finding by the general verdict that he did not assume the risk which caused his injury. The language employed in *Grand Trunk, etc., R. Co.* v. *Poole, supra,* 579, is applicable to the situation presented by the issues and the answers to the interrogatories in this case. Appellee's conduct in this case must be viewed and judged in connection with appellant's alleged negligence. Appellant had undertaken to block all the frogs in the yards, and appellee knew and relied upon this fact. A blocked frog may not be wholly free from danger, but we can not say this accident would have happened as it did if the blocking had been properly done, or had been in good condition.

The answers here do not show that appellee had actual knowledge of the condition of the unblocked frog which caught his foot and caused the injury, nor do the facts found which show his opportunity for knowing the conditions of the yard generally, and the finding that he could have seen the unblocked frog by looking, when considered. in connection with averments of the complaint which show the necessity for prompt and hasty action in doing the work appellee was ordered to do just before his injury, and the custom of blocking frogs and his reliance thereon, enable the court to declare as a matter of law that he assumed the particular risk that caused his injury. *Baltimore, etc., R. Co.* v. *Kiser* (1912), 51 Ind. App. 58, 94 N. E. 330 and cases cited; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 301, 53 N. E. 235. The language of the Supreme Court of the United States in *Chicago, etc., R. Co.* v. *Brown* (1913), 229 U. S. 317, 33 Sup. Ct. 840, 57 L. Ed. 1204, is applicable here: "The movement of trains requires prompt action, and we can not hold that as a matter of law Brown, in leaning forward to remove a pin which would have yielded to his effort, was guilty of negligence because he did not anticipate that his foot might slip and be caught in an open .

frog rail of which he had or could be charged with knowledge.''

It is further contended that the answers, showing that there was a lever on the stationary car connected with the coupler by means of which the coupling pin could be raised so as to prevent the cars coupling when "bumped" and that appellee could have operated this lever in safety without going between the cars prove conclusively that there were two ways open to appellee to comply with the order of his superior, one of which was safe and the other dangerous, and that he voluntarily chose the dangerous way, and is therefore guilty of contributory negligence. It is not shown that the knuckle could be closed by the use of this lever, but that by its use coupling could be prevented by raising the coupling pin. Appellee contends that to have used this lever would not have been a compliance with his order to "close the knuckle of the coupler" and that the order could not be complied with by using the lever. The complaint charges that it was necessary to go between the tracks to the center of the end of the car to close the knuckle and we can not say that the answers in regard to said lever show conclusively that the order could have been complied with by using the lever, though they do show that coupling could be prevented by its use. They do not overcome the finding by the general verdict that it was necessary and customary to step to the end of the car to close the knuckle. In any event evidence could have been introduced to show that there was some practical reason for closing the knuckle and making a "bumper" out of it, instead of raising the coupling pin and preventing coupling in that way; that an entirely different order would have been usual and proper if appellee had been directed to use the lever. But there is another and more potent reason for holding that these answers do not conclusively show contributory negligence of appellee in choosing a dangerous way when he could have chosen a safe way. The findings show

that the car on which the coupler was to be adjusted was standing, and that the moving cars were running at a speed of three or four miles per hour, but they do not show how far the moving cars were from the stationary car when appellee undertook to close the knuckle and the answers do not show that closing the knuckle on the standing car by the use of his hands, under the circumstances of this case, was an unsafe and more dangerous way of complying with the order given appellee than any other equally available way open to him at the time. And furthermore as against the motion for judgment on the answers to the interrogatories we must consider the question in the light of the possible evidence that the approaching cars were so far away as to make the way chosen reasonably safe and proper. *Jenney Electric Mfg. Co.* v. *Flannery* (1913), 53 Ind. App. 397, 98 N. E. 424. But for the danger caused by the open and unblocked frog, it does not appear that going to the end of the standing car and stepping between the tracks was an unsafe way of closing the knuckle on the standing car, or that an ordinarily prudent man exercising ordinary care for his own safety would not have undertaken in that way to comply with the order given appellee.

Appellant also contends that the verdict of the jury is not sustained by sufficient evidence; that there is no evidence tending to prove the allegation of the complaint that it was the custom and practice of appellant prior to appellee's injury, to block all the frogs in the yard where appellee was injured and that appellee knew of the custom and relied thereon. Also that the undisputed evidence shows affirmatively that appellee's injury resulted from the ordinary dangers and hazards of his employment which were open and obvious and could have been ascertained by him had he exercised ordinary care for his own safety; that his opportunity to know of the danger was better than that of appellant; that the undisputed evidence shows that he voluntarily chose an unsafe way of performing his duty when a safe

way was open to him and he was therefore guilty of
7. contributory negligence. While in this State railroad
companies are not, in all cases, guilty of actionable
negligence in failing to block frogs, there are nevertheless,
instances in which they may be held liable for failure so
to do. *Grand Trunk, etc., R. Co.* v. *Poole, supra; Grand
Trunk, etc., R. Co.* v. *Melrose* (1906), 166 Ind. 658, 667, 670,
78 N. E. 190; *Sheets* v. *Chicago, etc., R. Co.* (1894), 139 Ind.
682, 39 N. E. 154; *Wabash R. Co.* v. *Ray* (1899), 152 Ind.
392, 51 N. E. 920. Where the evidence is such that
8. different inferences may be drawn therefrom by rea-
sonable minds on the question of assumption of risk
or contributory negligence, the question should be submitted
to the jury under proper instructions. *Annadall* v. *Union
Cement, etc., Co.* (1905), 165 Ind. 110, 112, 74 N. E. 893;
*Brazil Block Coal Co.* v. *Gibson* (1903), 160 Ind. 319, 328,
66 N. E. 882, 98 Am. St. 281; *Jenney Electric Mfg. Co.* v.
*Flannery, supra; Grand Trunk, etc., R. Co.* v. *Melrose, su-
pra,* 670; *Chicago, etc., R. Co.* v. *Hamerick* (1912), 50 Ind.
App. 425, 446, 96 N. E. 649. It would unduly extend this
opinion to set out the evidence of blocking frogs in the
yards where appellee was injured, but there is evidence to
warrant such an inference and in addition thereto the posi-
tive evidence of Peter H. Young, an employe of appellant,
with opportunity of observing and knowing whether such
custom existed, that "It was the custom to block all these
switches, frogs and guard rails" in the Huntington yards.

Appellee testified that he had been switching eleven
months prior to his injury and that he was injured on
November 15, 1906, while working at the west end of the
yards; that Maloney, who had charge of the crew, called to
him to close the knuckle on a car standing on track No. 9 so
it could be shoved along without coupling; that he imme-
diately attempted to do so by stepping between the rails at
the end of the standing car and caught his foot in the frog
and before he could get out was caught and injured; that the

knuckle can be opened by the lever on the automatic brake to uncouple the cars but it can not be closed by the lever and to close it "you must use your hands or feet or a club"; that when the knuckles are closed they bump straight together but when open they hit sidewise when they come together; that by holding the lever down, the pin is prevented from dropping and the couplers come together in the same position as when coupling, but not closed; that the cars may be prevented from coupling in this way and be shoved back, if the lifting apparatus is in good condition; that Maloney pointed to the standing car and said "Close the knuckle on that car".

The jury in arriving at a verdict may consider all the facts and circumstances proven by the evidence and may draw therefrom such inferences as are reasonably warranted thereby. In this case by the general verdict, the jury not only found that the custom of blocking frogs existed, but that appellee relied thereon, and that the unblocked frog was the proximate cause of his injury. On the facts of this case, the questions of appellee's contributory negligence and assumption of risk, were rightly submitted to the jury for determination under proper instructions by the court. The jury found the facts and drew the inferences necessary to support the verdict. There is evidence tending to prove the material facts and to warrant the inferences drawn by the jury, and we can not say therefore, that there is a failure of proof or that the inferences drawn are unreasonable.

Some objections are raised to instructions given and refused. We have carefully examined the instructions and in view of the issues and evidence do not consider the questions suggested of sufficient importance to require detailed consideration. The instructions when fairly construed are not open to the objections urged. Those given fairly and fully state the law applicable to the issues and the evidence. No error prejudicial to appellant was committed, either in giving or refusing instructions.

Appellant offered in evidence a statement identified as signed by appellee on November 16, 1906, and certified by the attending surgeons of appellee who were employes 9. of appellant. The statement related to the time, place and manner in which the injury was received as follows: "While in the act of throwing a knuckle, my foot caught on a rail and threw me across the track, and the wheel of a Gondola passed over left leg, above the knee; and the right foot and right arm was caught between the coupler. Who was present: Ed Maloney, Charles Shock. By whose fault if any persons: (Ans.) Accidental." Objection was made on the ground that it was shown that the statement which was taken by the attending physician in the sick room, was a confidential communication under the statute, and that the offer was an attempt to prove by indirection what could not be proven directly. While the statement was signed by appellee, it was also signed and certified by two persons who wrote after their names "Attending Surgeon". The statement also shows that appellee had been sent to Chicago and was in charge of "company's surgeon-in-chief".

The objection was rightly sustained. The excluded statement was not only a "communication to" the attending physicians "in the course of their professional business" but was also a statement of the physicians themselves. After appellant's signature the instrument contains the following: "If operation was performed did the injured person consent: (Ans.) None at this writing. Give date of operation, names of operating surgeons, witnesses to operation: (Ans.) None at this writing". Then follows the certificate and signatures of the "attending physicians". This was clearly an attempt to get before the jury by this indirect method a confidential communication of appellee and also the statement of the physicians made at the same time and under the same circumstances.

Statements made to or by physicians employed by a railroad company while attending the injured party shortly

after his injury, should be closely scrutinized, because 10. of the situation and condition of the injured party and the natural bias and influence of physicians so situated. Where as in this case, it clearly appears that the physicians were rendering the patient medical and surgical attention when the communication was made and that he was depending on them for such services, and also that the instrument is a statement of both patient and physicians, made under like circumstances, some latitude must necessarily be given the trial court in determining whether the evidence offered does or does not come within the prohibition of the statute as to privileged communications. The offered evidence in this case is so clearly within the spirit and meaning of the statute that to admit it on the ground that it is only a signed statement of appellee made out of court, tending to contradict his testimony, would be a surrender to technical form in violation of the spirit if not of the letter of the statute. Subd. 4, §520 Burns 1914, §496 R. S. 1881; *Hays* v. *Hays* (1912), 49 Ind. App. 298, 97 N. E. 198, and cases cited.

The other questions suggested by the briefs are in effect disposed of by what we have already said and do not justify the further extension of this opinion. No error prejudicial to appellant is shown by the briefs, and the judgment is therefore affirmed.

NOTE.—Reported in 104 N. E. 50. As to risks assumed by servants under master and servant law, see 52 Am. Rep. 737. As to the duty of a railroad company to block frogs, switches and guard rails, see 9 Ann. Cas. 498; 14 Ann. Cas. 696. As to servants' assumption of obvious risks of hazardous employment, see 1 L. R. A. (N. S.) 272. For servants' assumption of risk of danger imperfectly appreciated, see 4 L. R. A. (N. S.) 990. See, also, under (1) 26 Cyc. 1397, 1399; (2, 3, 4) 38 Cyc. 1927; (5, 6) 26 Cyc. 1513; (7) 20 Cyc. 1128; (8) 26 Cyc. 1478, 1482, 1513; (9) 40 Cyc. 2383; (10) 40 Cyc. 2396.