563 N.E.2d 1275 (1990)
In the matter of C.P., a Child Alleged to Be a Delinquent Child.
No. 52S04-9012-JV-781.
Supreme Court of Indiana.
December 13, 1990.
*1276 Jeffry G. Price, Peru, for appellant.
Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.
SHEPARD, Chief Justice.
The question is whether patient communications to a counselor who is supervised by a psychiatrist fall within the doctor-patient privilege. We hold that a counselor who aids the psychiatrist is covered by the privilege. By contrast, a counselor who is in fact the caregiver and acts largely independently is not an adjunct to the psychiatrist and thus is not covered by the privilege.
This dispute arose after the State of Indiana filed a delinquency petition concerning C.P., a sixteen year old girl, alleging habitual disobedience, frequently called incorrigibility. Ind. Code § 31-6-4-1(a)(4) (West Supp. 1990). C.P.'s mother was the complaining witness; it was she who executed a consent to disclose confidential information relating to treatment C.P. had received at the Four-County Counseling Center. The trial court appointed an attorney as pauper counsel and guardian ad litem. C.P. denied the incorrigibility charge, and the court held a fact-finding hearing. The State called as a witness Mark Brown, a social worker from the community mental health center. Brown had provided therapy, diagnosis and treatment to C.P. the previous year. C.P. objected to Brown's testimony, asserting the physician-patient privilege. C.P. also objected to the introduction of her records from the mental health center, raising three grounds: the physician-patient privilege, hearsay, and invalidity of the consent given by C.P.'s mother. The trial court overruled the objections. C.P. requested certification of these questions for interlocutory appeal. The trial court certified the questions concerning admissibility of Brown's testimony and of the records and stayed its proceedings pending appeal.
The Court of Appeals affirmed the trial court's decisions on both evidentiary questions. In the Matter of C.P. (1989), Ind. App., 543 N.E.2d 410. The Court of Appeals' decision was correct. We grant transfer to explore the applicability of the physician-patient privilege to counselors who are not physicians.[1] We affirm the trial court.

I. Evidence in the Trial Court
To establish incorrigibility and delinquency the State needed to prove C.P. "habitually disobeys the reasonable and lawful commands of [her] parent, guardian, or custodian" and that she "needs care, treatment or rehabilitation" that she is not receiving, that she is unlikely to accept voluntarily and that she is unlikely to be provided or accepted without the coercive intervention of the court. Ind. Code § 31-6-4-1(a)(4), (b)(2) (West Supp. 1990). To establish these elements, the State called counselor Brown to testify. The evidence revealed that Brown has a bachelor's degree in special education and a master's degree in social work. He is a member of the Academy of Certified Social Workers. He is not, however, a certified psychologist or a psychiatrist. His diagnoses and treatment plans are subject to approval by a supervising psychiatrist with whom Brown consults on each case.
C.P.'s attorney argues that Brown's testimony should have been excluded under the statutory physician-patient privilege because Brown was "adjunct personnel" to the psychiatrist. He asserts that the Court of Appeals' opinion conflicts with other decisions on this issue. Resolving this issue requires an examination of the breadth of the physician-patient privilege and the application *1277 of that analysis to the facts of this case.

II. History of the Physician-Patient Privilege
The physician-patient privilege did not exist at common law. Towles v. McCurdy (1904), 163 Ind. 12, 71 N.E. 129, overruled on other grounds, Haverstick v. Banet (1977), 267 Ind. 351, 370 N.E.2d 341. The first Indiana statute to confer such a privilege was adopted in 1852. Note, Testimonial Privilege and Competency in Indiana, 27 Ind.L.J. 256, 258 n. 5 (1952).
Indiana's present version of this statutory privilege does not mention privilege at all. Rather, it declares that physicians are not competent as witnesses on matters communicated between the physician and a patient. It reads in relevant part:
Except as otherwise provided by statute, the following persons shall not be competent witnesses:
* * * * * *
(3) Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases.
Ind. Code § 34-1-14-5(3) (West Supp. 1990). This statute, like most of its predecessors, takes the form of a directive concerning the competency of a witness.[2] Nevertheless, this Court has long regarded the statute as creating a privilege:
Notwithstanding the absolutely prohibitory form of our present statute, we think it confers a privilege which the patient, for whose benefit the provision is made, may claim or waive. It gives no right to the physician to refuse to testify, and creates no absolute incompetency. To hold otherwise would result in many cases in obstructing justice without subserving the purpose of the statute.
Penn Mutual Life Ins. v. Wiler (1884), 100 Ind. 92, 100-01. This interpretation of the statute as creating a privilege and not an absolute disqualification has stood since Wiler, without legislative correction.
Because the statute on physician-patient privilege is in derogation of the common law, it is strictly construed. Stayner v. Nye (1949), 227 Ind. 231, 85 N.E.2d 496, overruled on other grounds, Haverstick v. Banet (1977), 267 Ind. 351, 370 N.E.2d 341. For this reason, and because laws creating privileges "prohibit the ascertainment of truth in many controversies," the courts do not extend the scope of the privilege by implication. Alder v. State (1958), 239 Ind. 68, 74, 154 N.E.2d 716, 719. This approach is consistent with the U.S. Supreme Court's rule that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974).
Among the early tasks in defining the scope of the physician-patient privilege was exploration of the term "physician." In William Laurie Co. v. McCullough (1910), 174 Ind. 477, 90 N.E. 1014, we defined the word "physician" to mean "a person who has received the degree of doctor of medicine from an incorporated institution; one lawfully engaged in the practice of medicine," and pointed out that it is unlawful for anyone to practice medicine in this state without first obtaining a license to do so. Id. at 488, 90 N.E. at 1018. Justice Montgomery wrote for the Court:
[T]he word physician includes those only who are "lawfully" engaged in the practice of medicine, and therefore duly authorized to pursue that vocation. .. . It will not be presumed that this exceptional privilege was intended to apply to transactions between citizens and charlatans or impostors whose business is conducted in violation of the law, nor can it be extended by construction, to persons employing other curative processes which do not come within the ordinary meaning of the term "practicing medicine."
*1278 Id. at 489, 90 N.E. at 1018. The Court held that the information a gymnastics instructor acquired while giving appellee a course in gymnastic exercises was not privileged, even though appellee consulted the gymnastics instructor upon the advice of a physician. Id. at 489-90, 90 N.E. at 1018.[3]
The privilege is intended to inspire full and complete communication by patients so as to further trustful and successful treatment. Accordingly, this Court has long recognized that the privilege covers both physicians and those who aid physicians, "other persons whose intervention is strictly necessary to enable the parties to communicate with each other." Springer v. Byram (1893), 137 Ind. 15, 22, 36 N.E. 361, 363. It covers third persons "necessary for the purpose of transmitting information and aiding the physician." Doss v. State (1971), 256 Ind. 174, 181, 267 N.E.2d 385, 390. For example, a laboratory technician who draws a patient's blood under the supervision of the attending physician is covered by the privilege. Schultz v. State (1981), Ind. App., 417 N.E.2d 1127. By contrast, a counselor who functions as the caregiver is not covered by the statutory privilege, and neither are the counselor's files. See Hulett v. State (1990), Ind. App., 552 N.E.2d 47. Similarly, a caseworker who counsels juveniles in a residential facility is not covered by the privilege. In re L.J.M. (1985), Ind. App., 473 N.E.2d 637.

III. Does the Privilege Apply to Brown?
The issue posed here is whether counselor Brown, who works under the supervision of a psychiatrist, is an adjunct to the psychiatrist (placing Brown under the psychiatrist's privilege) or whether counselor Brown is himself the real caregiver (placing him outside the privilege). The nature and degree of control exercised by the psychiatrist is thus central to the analysis. The description of a leading commentator puts the matter well:
If, for example, the psychiatrist works closely with a social worker who takes part of a patient's history it should not matter whether the psychotherapist is present since the patient should treat the social worker with the same trust. Similarly, if a paraprofessional is working under close supervision and control of a professional he should be covered. In contrast, paraprofessionals who are left virtually unsupervised ... are probably not considered by the patient as psychotherapists and they should not be included in the privilege.
J. Weinstein and M. Berger, Weinstein's Evidence, para. 504[05], at 504-26 (1989).
Under this test, the evidence suggests that the true caregiver was counselor Brown. As far as we can determine from Brown's testimony, Brown was the only person at the mental health center who actually consulted with C.P.; C.P. and the psychiatrist never saw each other. Brown's relationship with C.P. was apparently a typical one. After Brown completed an initial consultation with a patient, he would "come up with a diagnostic formulation to determine what the patient appeared to be diagnostically and then develop a treatment plan." Record at 83. Brown subsequently presented his diagnosis and plan to the psychiatrist for approval. Such presentation sessions with the psychiatrist typically lasted five to fifteen minutes. The psychiatrist would either approve the plan, add something to it, or direct that Brown prepare a new one. It appears that the psychiatrist did not prepare plans for patients treated by Brown. After a plan was approved, Brown consulted with the psychiatrist about a patient only twice a year, perhaps quarterly.
We conclude that the evidence supports the trial court's determination that C.P.'s communications to counselor Brown were *1279 not communications to a physician.[4] After all, C.P. never even saw a physician. To paraphrase Weinstein, counselors who operate independently with little intervention by a psychiatrist are probably not regarded by patients as physicians and thus should not be included in the privilege. J. Weinstein & M. Berger, supra. The existence of the relationship is a question of fact to be determined by the trial court on the basis of the evidence. See Chicago & Erie R.R. v. Schenkel (1914), 57 Ind. App. 175, 189, 104 N.E. 50, 55. Because the trial court's determination is supported by substantial evidence, we affirm it. Brown was not covered by the privilege.
We affirm the judgment of the trial court.
DeBRULER, GIVAN, and PIVARNIK, JJ., concur.
DICKSON, J., concurs in result.
NOTES
[1] The Court of Appeals correctly rejected C.P.'s arguments concerning admissibility of the records from the mental health center. It also properly resolved the issues concerning the waiver executed by C.P.'s mother. We affirm the Court of Appeals' decision on these issues. Ind.Appellate Rule 11(B)(3).
[2] The principle exception was the original physician-patient statute which did not make any reference to the notion of competence and contained a rather straightforward waiver provision. "No attorney, physician, surgeon, clergyman, or priest, shall be allowed, in giving testimony, to disclose any communication... ." 2 Ind.Rev.Stat., ch. 8, § 241 (1852).
[3] The term physician also encompasses a doctor of chiropractic medicine. Collins v. Bair (1971), 256 Ind. 230, 234 n. 1, 268 N.E.2d 95, 97 n. 1 (citing Dean v. State ex rel. Bd. of Medical Registration and Examination (1954), 233 Ind. 25, 31, 116 N.E.2d 503, 503 ("This Court has held many times that the practice of `chiropractic' is the practice of medicine as defined in the Medical Practice Act.")).
[4] Accord Cunningham v. Southlake Center for Mental Health, 125 F.R.D. 474 (N.D.Ind. 1989) (counselor who consulted daily with psychiatrists and discussed patient's care with them is himself primary caregiver and thus not within privilege).